Thomas A. JENKINS, Appellant,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee.

Jan. 16, 1973.

Certiorari Denied by Supreme Court
April 2, 1973.

Fillauer, Dietrick & Mobbs, Cleveland, for appellant.

David M. Pack, Atty. Gen., Nashville, William C. Koch, Jr., Asst. Atty. Gen., Nashville, Earle G. Murphy, Asst. Dist. Atty. Gen., Cleveland, for appellee.

## OPINION

The minutes of the Criminal Court of Bradley County, Tennessee show that Thomas A. Jenkins, whom we refer to as the defendant, represented by counsel was tried and convicted on March 21, 1969 of fraudulent use of a credit card and the jury fixed his punishment at three years in the State Penitentiary. Honorable James C. Witt, the Trial Judge, duly pronounced judgment and sentence in accordance with the verdict of the jury.

The defendant and his counsel signed a waiver of appeal.

On May 2, 1969 the Court on application of the defendant suspended the three years penitentiary sentence and placed the defendant on probation on conditions prescribed by the Court that the defendant shall at all times conduct himself in a manner consistent with good citizenship, not violate any law of any City, State, or the United States, that he not drink alcoholics, keep himself employed, not leave the jurisdiction of the Court without leave, that he make reports to the Court as required. That he pay money to the Credit Card Company within the term of his parole.

On November 10, 1971, the Court issued a written notice to the defendant to show cause why the parole and suspended sentence should not be revoked because the following conduct on the part of the defendant was inconsistent with good citizenship "(1) Charged in Bradley County Criminal Court and indicted for making false statement to the Department of Employment Security, (2) making false statement to Welfare Department for purpose of getting food stamps." This notice was served on the defendant by the Sheriff November 16, 1971, and required the defendant to appear before the Court on 23rd day of November 1971 at 10:00 A.M. in Cleveland, Tennessee. On that date the

Court appointed counsel to represent the defendant on the revocation hearing.

On March 29, 1972 the Court conducted an evidentiary hearing on the written notice served on the defendant. It was stipulated that on April 25, 1970 for the week he earned $107.87 in salary and wages from Vulcan Material Company and at the same time he received unemployment compensation for $47.00 from the Department of Employment Security on statements he made that he was unemployed at the time. Further it was stipulated he was convicted on March 8, and given a ninety day sentence and a hundred dollar fine. And that no restitution had been made on the Bank Americard account, but no installments set out. The condition of the probation was that it would be paid within the suspended sentence time and that runs to May 1972.

The defendant admitted he was convicted of fraudulent use of a credit card in 1969 and put under a three year suspended sentence.

He admitted he made false statements to unemployment security office.

That he did not know that if he was drawing workmen's compensation benefits that he would not be eligible to draw food stamps.

The defendant did not notify the Welfare Department that he was drawing workmen's compensation payments.

The defendant has repaid the State for the food stamps he received.

The defendant Thomas A. Jenkins testified he is married and they have five children ages 5 to 14. His wife is disabled with a concussion and both ankles broken as a result of an automobile collision in which they were not at fault in June 1968.

He admitted he made a false statement to the Unemployment Office. He explained:

"A. The reason I worked, I wasn't working the eight hours a day.

Some days I would be working the eight hours a day and some days I wouldn't be working all day. At this Vulcan Material Company you would get two hours reporting time. You work two hours and then you would knock it off. Sometimes you would be hauling asphalt or hauling over to the TVA at the steam plant. And I had some doctor bills and bills at this time and it was hard for me to pay my house payment and so I went ahead and signed these things where I could have groceries and pay my bills, light and water bills, and I was helping keeping up my mother at the time. She draws a little check but she has to pay house rent and I did help her along.

Q. Where are you working right now?

A. I am not working no where. I am off injured from the Terminal Transport in Chattanooga.

Q. When did you get injured?

A. I got injured on 12–18–71 and I am still under a doctor's care, Doctor Houston Price, on account of I had a slipped disc operation of my back and I have muscular spasms in my back and I have to take medicine for it.

Q. Is the workmen's compensation carrier for that company paying you—

A. Right.

Q. Weekly benefits right now.

A. Right.

Q. How much do they pay you?

A. Fifty-five dollars a week.

Q. All right. Is that all your income right now?

A. Right.

Q. And your wife is not able to work.

A. No, sir."

The defendant testified Mr. V. H. Donlen, Supervisor of Unemployment Insurance, wrote him in November 1971 that if he was unable to make the full restitution on the back payment where he had been overpaid, he could pay it by installments. That he sold his house for which he received a check for five thousand dollars about three weeks before this trial. That he is expecting Workmen's Compensation settlement for permanent disability.

That he has a damage suit pending in Hamilton County as a result of a car wreck where a woman ran him off the road, demolished his car and broke his nose.

The defendant's wife testified she is disabled and corroborated the defendant about their misfortunes. That when they started drawing the checks the defendant was still in the hospital.

The defendant contends the Trial Court erred in revoking the suspended sentence as the weight and preponderance of the evidence was against revocation and the Trial Court thereby abused its discretion.

■ The Trial Judge heard the witnesses and found the defendant had violated the terms of his probation and suspended sentence and ordered a revocation. His findings will be given the weight of a jury verdict. Taylor v. State, 180 Tenn. 62, 171 S.W.2d 403. See also Raper v. State, Tenn.Cr.App., 462 S.W.2d 261.

■ We overrule the assignment of error and hold that the evidence does not preponderate against the findings of the trial judge.

In support of our action we cite the following authorities:

In Davenport v. State, 214 Tenn. 468, 381 S.W.2d 276 the Court said:

"To revoke a suspended sentence * * * does not require the quantum of proof that is necessary to convict one of crime in the first instance. A suspended sentence granted by the trial judge in the first instance is granted on the theory and basis that the person whose sentence is suspended is punished sufficiently and that he will not violate the law again—that he will lead a lawful life. When it appears to the trial judge that his confidence in the prisoner, and his effort to aid the prisoner in suspending part of his sentence, has been violated then it is entirely within the right of the trial judge to suspend such sentence."

This above quotation appears in 198 Tenn. 269, 279 S.W.2d 262; 214 Tenn. 474, 381 S.W.2d 279, and 215 Tenn. 561, 387 S.W.2d 814, and there seems to be a typographical error in the last line. The eminent Justices evidently intended to say "revoke the suspended sentence" instead of "suspend such sentence."

" 'In those jurisdictions in which a provision is made for a hearing, the hearing is summary in nature. The defendant is not entitled to the same guarantees as a person who is not convicted and is merely on trial upon an accusation of crime; the court is not bound by the rule of evidence governing such a trial; and it is not necessary to prove beyond a reasonable doubt that the defendant has violated the conditions of the probation order.' "

In Bledsoe v. State, 215 Tenn. 553, 387 S.W.2d 811 the Court said:

" 'In granting the probation and in suspending the probation the question is whether or not the court is satisfied that its action will subserve the ends of justice in the best interests of both the public and the defendant. And this rests in the sound discretion of the court. And this discretion of course means that the trial judge will and does exercise a conscientious judgment, not an arbitrary action.' "

\* \* \* \* \* \*

" 'In reviewing the action of the trial judge, pursuant to T.C.A. § 40–2907 (Supp.1963), this Court examines the record and if, as in the instant case, we find that the trial judge has exercised a conscientious judgment rather than an arbitrary one, then his judgment will be affirmed.' "

We are of the opinion the Trial Judge exercised a conscientious judgment rather than an arbitrary one.

The judgment is affirmed.

RUSSELL and OLIVER, JJ., concur.