IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 12, 2007 Session

## FLAUTT & MANN, a Partnership v. THE COUNCIL OF THE CITY OF MEMPHIS, ET AL.

Direct Appeal from the Circuit Court for Shelby County
No. 75359-4 T.D.     Rita L. Stotts, Judge

No. W2006-02227-COA-R3-CV - Filed February 20, 2008

This appeal involves protracted litigation concerning the zoning of a parcel of land located in Memphis, Tennessee. After a bridge, which provided the only access to the property, collapsed, the landowners planned to install and maintain billboards on the subject parcel by helicopter. The landowners initially applied to the Memphis City Council to have the subject parcel re-zoned from agricultural uses to commercial uses. The Memphis City Council rejected the landowners' application. The landowners filed a petition for review by common law and statutory writ of certiorari and an action for declaratory judgment in the circuit court. The circuit court entered an order reversing the decision of the Memphis City Council and remanding the case to the Council for a new hearing.

Upon remand, the Memphis City Council once again rejected the landowners' application. The landowners filed a petition for contempt in the circuit court alleging the Council violated the court's order on remand. The trial court found that the Council violated its order, but that the Council was not in willful contempt of the court's order because it relied on the erroneous advice of its lawyer in interpreting the order. The trial court remanded the case to the Memphis City Council for a new hearing. The City filed an appeal in this Court. After noting that reliance on the advice of counsel is not a defense to contempt, we reversed the trial court's decision and remanded the case to the trial court to determine if the contempt was willful. On remand, the trial court found that the City was in willful contempt of the trial court's order and assessed daily damages of $1,500, accruing from June 13, 2003 order, until the Council complied with the court's order. The City filed a second appeal in this Court. We vacate the trial court's damages order and remand the case to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which HOLLY M. KIRBY, J., and JOHN EVERETT WILLIAMS, SP. J., joined.

Lori Hackleman Patterson, Allan Jerome Wade and Brandy S. Parrish, Memphis, Tennessee, for the appellants, The Council of the City of Memphis and The City of Memphis.

William H Fisher, III, and Valerie Futris Fisher, Memphis, Tennessee, for the Appellee, Flautt & Mann.

## OPINION

### Factual Background and Procedural History

This case is a second appeal regarding a contempt order. *See Flautt & Mann v. Council of City of Memphis*, No. W2004-01188-COA-R3-CV, 2005 WL 940568, at *1 (Tenn. Ct. App. Apr. 22, 2005). The underlying facts and pertinent procedural history set forth in our previous opinion are reiterated below:

> In 1979, Flautt & Mann, a partnership, purchased a parcel of real property currently located at the intersection of Interstate 240 and Mt. Moriah Road in Memphis, Tennessee. The subject property, approximately 13.55 acres in size, is presently bounded by Interstate 240 to the north, "old" Mt. Moriah Road to the west, Nonconnah Creek to the south, and property owned by Shelby County to the east. According to Flautt & Mann, they originally intended to use the subject property to develop commercial office buildings. When Flautt & Mann purchased the property, vehicles could access the parcel by using a bridge from "old" Mt. Moriah Road, a public road, across Nonconnah Creek.

> At some point, the State of Tennessee ("State") constructed a portion of Interstate 240 to the north of the subject parcel, and the project included the construction of an interchange at Mt. Moriah Road. During the course of constructing the new interchange, the State created a new bridge across Nonconnah Creek which, in turn, limited access to "old" Mt. Moriah Road. The State did, however, leave the "old" Mt. Moriah Road bridge intact when it completed construction of the interchange. Thereafter, maintenance of the "old" Mt. Moriah Road bridge ceased. In approximately 1984, the "old" Mt. Moriah Road bridge leading to the subject parcel collapsed. Following the bridge's collapse, no effort was undertaken to rebuild the bridge, and the subject property remained without vehicle access.[FN1] In approximately 1990, the State filed a condemnation action against Flautt & Mann in the Circuit Court of Shelby County to acquire a portion of the subject property to widen Interstate 240. In turn, Flautt & Mann filed a claim against the City of Memphis ("City") seeking a mandatory injunction ordering the City to restore access to the subject property.

**FN1.** It is estimated that the cost of restoring access to the property by building a new bridge across Nonconnah Creek would be approximately $2,000,000.00.

Without vehicle access, the only way to reach the subject property is by helicopter. Flautt & Mann determined, and the City agreed, that the only economically viable use of the property was as a site for the construction and maintenance of billboards, which could be accomplished by helicopter. The City, however, has zoned the subject property for agricultural uses only. On May 10, 1994, Flautt & Mann filed an application with the Memphis and Shelby County Office of Planning and Development ("OPD") seeking to have the property re-zoned for either commercial or industrial uses.[FN2] After reviewing the application, OPD recommended that the application be rejected for the following reasons:

> **FN2.** It was necessary for Flautt & Mann to file an application for re-zoning due to state law, which provides:
> **Restrictions on outdoor advertising on interstate and primary highways.** – No outdoor advertising shall be erected or maintained within six hundred sixty feet (660') of the nearest edge of the right-of-way and visible from the main traveled way of the interstate or primary highway systems in this state except the following:
> (1) Directional or other official signs and notices including, but not limited to, signs and notices pertaining to natural wonders, scenic and historical attractions which are authorized or required by law;
> (2) Signs, displays and devices advertising the sale or lease of property on which they are located;
> (3) Signs, displays and devices advertising activities conducted on the property on which they are located;
> (4) Signs, displays and devices located in areas which are zoned industrial or commercial under authority of law and whose size, lighting and spacing are consistent with customary use as determined by agreement between the state of Tennessee and the secretary of transportation of the United States; and
> (5) Signs, displays and devices located in unzoned commercial or industrial areas as may be determined by agreement between the state of Tennessee and the secretary of transportation of the United States and subject to regulations promulgated by the commissioner.
>
> Tenn. Code Ann. § 54-21-103 (2003). All of the subject property is within 660 feet of Interstate 240, therefore, Flautt & Mann sought to qualify for the exception in section 54-21-103(4) of the Tennessee Code by having the property re-zoned.

1.  The location of the site makes rezoning to the Highway Commercial District inappropriate. The property has no available vehicular access to support land uses permitted by the C-H District including billboards. No access is allowed for maintenance of signs from the interstate by the TN Department of Transportation.
2. Rezoning to the C-H District cannot be justified solely for the purpose of allowing billboards.
3. Billboards on the subject property may be visible over sound barriers erected behind single family residential properties north of the expressway creating an adverse visual effect on those residences.

In fact, OPD's policy is to reject applications for re-zoning to commercial or industrial designations when the sole purpose is to construct billboards. The Memphis and Shelby County Land Use Control Board subsequently rejected the application based upon the recommendation of OPD. Flautt & Mann appealed the rejection of its application to the Memphis City Council.

On November 21, 1995, Flautt & Mann's application came before the Memphis City Council. At the hearing, Mary Baker ("Ms.Baker"), Deputy Director of OPD, advised the Memphis City Council that OPD recommended rejecting the application because the property did not have adequate vehicle access. In addition, a neighborhood association attended the meeting and offered testimony in opposition to Flautt & Mann's application. The Memphis City Council voted five (5) to four (4) in favor of granting Flautt & Mann's application, but the application failed because zoning changes require the approval of a majority of the fifteen member Memphis City Council.

On January 17, 1996, Flautt & Mann filed a "Petition for Certiorari or, in the Alternative, for Declaratory Judgment" in the Circuit Court of Shelby County. The petition alleged two counts: (1) that, pursuant to a common law writ of certiorari codified at section 27-8-101 of the Tennessee Code, the circuit court should find that the Memphis City Council exceeded its jurisdiction or acted illegally and arbitrarily in denying Flautt & Mann's application for re-zoning; and (2) that, since the actions of the Memphis City Council amounted to a taking without just compensation, Flautt & Mann is entitled to a declaratory judgment to that effect. Flautt & Mann also requested a jury to try the issues when joined. The circuit court entered a Writ of Certiorari on January 17, 1996, requesting that the record of the proceedings before the Memphis City Council be certified and sent to the circuit court for review. On March 20, 1996, the City filed a motion seeking to dismiss the declaratory judgment count in the petition. The City alleged that the declaratory judgment count encompassed the same relief sought by Flautt & Mann in its third-party complaint against the City in the condemnation action filed by the State. On August 27, 2002,

the circuit court entered a consent order transferring the case, which had previously been set for trial by a jury, to the court's non-jury calendar.

On March 18, 2003, following a hearing on the matter,[FN3] the trial judge addressed the parties in open court, stating:

> **FN3.** On March 10, 2003, the circuit court heard testimony from Judson R. TePaske, a planning consultant, and entertained ten exhibits introduced during the hearing. On March 11, 2003, the circuit court heard argument from counsel for the parties.

> I reviewed the submissions on this matter and it appears to me that this case should be remanded to the City Council because I do think their actions were arbitrary in light of evidence concerning the surrounding properties. It may not have been intentional on their part, particularly as I said I observed the majority vote was in your client's favor, but the ultimate result was still the same. So we'll see what happens upon remand. If y'all [sic] will draft the appropriate order.

That same day, the circuit court entered an order containing the following language:

> This Cause came to be heard this day . . . on the petition of . . . Flautt & Mann, for review by common law certioriari, statutory certiorari, and/or declaratory judgment of the action of the Memphis City Council in denying Plaintiff's request for rezoning of property owned by it . . . on the hearing on Plaintiff's petition in open Court; on the responses of the Defendants to the Plaintiff's Request for Admissions; on the testimony of Judson TePaske; and, on the entire record in this Cause, from all of which the Court makes the following findings of fact and conclusions of law:

> That the denial of the Plaintiff's request for a change of zoning from AG to CH is invalid and should be reversed for the reason that it violates Section 138 of the Charter of the City of Memphis [FN4] in that the Council failed to consider the complete change in the character of the neighborhood in which the subject property is located from AG to CH, and failed to take into account the fact that the subject [sic] is not suitable for any economically viable use with its existing AG zoning and is suitable for an economically viable use only if zoned CH.

> > **FN4.** Section 138 of the Charter of the City of Memphis provides:

For each of such districts, regulations may be imposed by ordinance, designating the uses for which buildings may or may not be erected or altered, and designating the trades and industries that shall be excluded or subjected to special regulations. Such regulations shall be in accordance with a plan designated to lessen congestion on the public streets, to promote the public health, safety, convenience general welfare, and *shall be made with reasonable consideration, among other things, to the character of the district, its peculiar suitability for particular uses, the conservation of property values, and the direction of building development.*

(emphasis added).

The denial of the zoning requested is invalid and should be reversed for the additional reason that it denies to the Plaintiff the same CH zoning given almost every other parcel of land in its relevant neighborhood, and also because it deprives the Plaintiff of the same commercial and industrial zoning necessary for the construction of "signs" within 660 feet of an interstate highway, given many other parcels of property located throughout the City, which are similarly situated, i.e., which have no vehicular access and on which "signs" are the only existing structures.

The denial of the zoning requested is invalid and should be reversed for the further reason that it deprives the Plaintiff of its reasonable investment-backed expectations for its property (i.e., use as a commercial site) and deprives the Plaintiff of the only economically viable use of its property, which is conceded to be use as a "sign" site.

Since the Council made no findings of fact, it is not possible to know the basis for its decision in denying the Plaintiff's request for change of zoning. However, there were only six reasons for rejection of Plaintiff's request advanced by OPD and protestors who appeared at the Council hearing, and it may therefore be assumed that the denial of the zoning requested by Plaintiff was based on one or more of these reasons, which are as follows:

1. That the CH zoning requested would constitute "spot zoning";

2. That the subject property lacked vehicular access;

3. That the construction of "signs" on the subject property are aesthetically displeasing;

4. That CH zoning cannot be justified solely for the construction of "signs";

5. That "signs" on the subject property may be seen from the residential neighborhood to the north of the subject property; and,

6. That the construction of "signs" on the subject property would require cutting trees, which would be detrimental to the environment.

If the Council's denial of the Plaintiff's request for CH zoning was based on any of the grounds enumerated above, the denial is invalid and should be reversed . . . .

. . . .

On the basis of the foregoing, IT IS, THEREFORE, ORDERED, ADJUDGED, and DECREED that the decision of the Council denying the Plaintiff's requested change of zoning for the subject property from AG to CH be, and the same is hereby, reversed, and the Cause is remanded to the City Council with instructions to the Council to grant the Plaintiff's request for rezoning of the subject property from AG to CH.

Counsel for Flautt & Mann drafted the order and inserted the instruction to the Memphis City Council to grant the requested zoning on remand.

Additionally, the original order contained the following findings: the zoning requested by Flautt & Mann would not constitute spot zoning; it was unreasonable for the Memphis City Council to require vehicle access because the zoning ordinances contain no such requirement, and other property throughout the City has been granted commercial zoning despite lack of vehicle access; zoning based solely on aesthetic reasons is invalid in Tennessee; the zoning ordinances permit the construction of signs in commercial zones, therefore, a policy absolutely prohibiting re-zoning for the purpose of constructing signs is contrary to law; pictures presented at the hearing conclusively proved that signs, if constructed on the subject property, could not be seen from the residential neighborhood to the north due the sound barrier wall on the north side of Interstate 240; and, since the property is wooded, any use of the property would involve cutting tress, therefore, a denial of zoning for this reason is invalid.

On April 15, 2003, the City filed a motion, pursuant to Rule 52.02 of the Tennessee Rules of Civil Procedure, asking the circuit court to clarify whether it intended to order the Memphis City Council to grant the requested zoning on remand.

Flautt & Mann subsequently filed its own motion to alter and amend the judgment, requesting that the court enter a revised order requiring the City to pay $439.15 per day from November 21, 1995, until the Memphis City Council granted Flautt & Mann the requested zoning as damages for the wrongful denial of zoning. The parties argued the motions before the circuit court over a period of two non-consecutive days.

At one of the hearings held on May 28, 2003, the trial judge made the following statements to the parties:

> I don't know what the result is going to be, but the point is this, after hearing the proof it was The Court's intention that the matter be remanded to the City Council and as I indicated I don't think I have a vote on the City Council.... My intent was to remand the case with the instruction to the City Council that the import of its ruling was that its decision was arbitrary and capricious.
> Now, in terms of how they fix that, I don't think I have the choice in terms of telling them how they fix what The Court has already found to have been an arbitrary and capricious decision. . . . Certainly I'm not going to change my ruling. But I'm just trying to make sure that everybody understands what my ruling was or what my intent was when I made my decision. That's to remand the case to the Council. But I don't think I can tell them you must make X decision. I think it's kind of implicit, but I don't think that my order should tell them you've got to vote a particular way because then I think I would be infringing on their authority, but the import is the same. Does that make sense?
> . . . .
> It seems to me that the order needs to be then amended consistent with Nance and Hoover, and in the ordering part it seems to me that there needs to be some language that tracks the language in Hoover in terms of telling the Council, number one, there's not to be any new evidence adduced or whatever, but they're to make their decision consistent with my order, and I mean it doesn't take a rocket scientist I don't guess to figure out if I've already said that the previous ruling was arbitrary and capricious, that I don't guess it's going to take a rocket scientist to figure that out.

On June 16, 2003, the circuit court granted the City's motion and denied the motion of Flautt & Mann. That same day, the circuit entered an amended order containing identical findings to the previous order, but the court removed the mandatory language and inserted the following language in its place:

On the basis of the foregoing, IT IS, THEREFORE, ORDERED, ADJUDGED and DECREED that the decision of the Council denying the Plaintiff's requested change of zoning for the subject property is remanded to the City Council, which in accordance with the holding in *Hoover v. Metropolitan Board of Zoning,* 955 S.W.2d 52 (Tenn.App.1997) is hereby instructed as follows: (1) the Council is to conduct a new hearing on Plaintiff's zoning application based solely on the record in this Court, consisting of the record of the initial hearing before the Council on November 21, 1995, and the additional evidence presented at the hearing of this cause; (2) that at the new hearing, it shall not consider additional evidence of any kind offered by anyone; (3) that following the new hearing, the Council shall take action which is consistent with the findings and conclusions contained in this order; and, (4) that the matter be expedited by the Council to the maximum extent possible. In making this order, the Court's intent is to remand this case to the City Council. The Court is not directing the Council to make any specific decision or to vote in any particular way, but is only directing that whatever action is taken be consistent with the findings and conclusions contained therein.[FN5]

> **FN5.** By letter dated June 12, 2003, a few days prior to the entry of the amended order, Mr. Fisher wrote to one of the City's attorneys stating that he agreed to the new language in the amended order based on the City's representations that the City would not appeal or attempt to sabotage his client's zoning application on remand.

Neither party appealed this final order. Subsequent to the trial court's amended order, Allan Wade ("Mr. Wade"), counsel for the Memphis City Council, and William Fisher ("Mr. Fisher"), counsel for Flautt & Mann, began communicating through numerous letters attempting to identify the action required by the Memphis City Council on remand. On June 16, 2003, the same day the trial court entered the amended order, Mr. Fisher wrote a letter to Mr. Wade stating that Flautt & Mann took the position that, while the amended order stated that the trial court was not ordering the Memphis City Council to take any particular action on remand, the trial judge implicitly intended for the council to approve the requested zoning. On June 20, 2003, Mr. Wade drafted a letter to Mr. Fisher in which he stated:

> Judge Stotts' Order notwithstanding, the Council has the legislative discretion, exercisable for a rational basis, to approve or to deny your client's application. This has always been my advice to the Council and will continue to be my advice to the Council. I have an ethical

-9-

duty, as do you, to follow the mandates of the Constitution and the Tennessee Supreme Court. I believe Judge Stotts has a similar judicial duty.

This verbal jousting continued as Flautt & Mann's zoning application made its way before the Memphis City Council on remand.

On remand, the Memphis Planning and Zoning Committee initially addressed Flautt & Mann's application on September 16, 2003. Mr. Wade appeared before the committee and presented a verbal summary of the case to the committee members. While he instructed the committee that the trial court ordered that reconsideration be limited to the record before the court, Mr. Wade made the following statement:

> I am going to prepare . . . I'm going to ask them to go back out and look at the property and come back to you with an updated report. I know this is something that is technically-it may be arguable [sic] outside the Court's Orders, but I believe that this body has an obligation to investigate the public safety, health, and welfare.
> I don't care what a Court tells you to do. And I'll go back and argue that one, but I think we need to make sure there are no other issues that we are going to consider.

When the council recognized the presence of Mr. Fisher at the hearing, Mr. Wade instructed the committee that, in order to strictly comply with the trial court's order, they should not hear from Mr. Fisher. The committee voted to accept Mr. Wade's recommendation for an updated report on the subject property and set the matter for another hearing on October 21, 2003.

Ms. Baker sent a memorandum dated October 16, 2003, to Mr. Wade providing, in relevant part, as follows:

> This memo is meant to provide an updated analysis from the Office of Planning and Development (OPD) regarding an application which proposed to rezone a 13.55 acre site adjacent to Interstate 240 at Mt. Moriah Road. . . . Nine years have passed since OPD issued a report on the application on July 14, 1994.
> The following updated comments are based on the agency's current view of the file, updated zoning maps and a recent field visit.
> . . .

The memorandum went on to state that the property remains inaccessible by vehicle; that Nonconnah Parkway, not shown on the map in the 1994 report, has been constructed; and contained current maps showing the subject property and

-10-

surrounding zoning pattern, stating that the dominant pattern is residential and agricultural.

On October 21, 2003, the Memphis City Council first addressed Flautt & Mann's application for re-zoning on remand. Mr. Wade once again undertook to address the Council members and summarize the litigation. At this meeting of the Memphis City Council, only seven of the members currently serving were serving at the time of the original application filed by Flautt & Mann. Due to the makeup of the existing Council, Mr. Wade stated that he asked OPD to revisit the site to "make sure there were no safety issues or any other issues relevant." Mr. Wade provided the Council members with a copy of the updated OPD report. Additionally, Mr. Wade emphasized to the Council members the discretionary nature of the language inserted into the trial court's amended order. Referencing section 138 of the Charter of the City of Memphis, Mr. Wade urged the Council to consider this provision and made the following statement:

> So-and safety is an issue that this council cannot delegate, whether a court tells you not to do it or not. It's something that you have to do irrespective of whether someone tells you not to do it or not.

Mr. Fisher also addressed the Council and stated his view as to what was required of the Council on remand. After many of the Council members expressed their confusion about what was expected on remand, the Memphis City Council voted to send the application back to the zoning committee for consideration and a hearing on November 18, 2003.

At the hearing before the zoning committee on November 18, 2003, Mr. Wade referenced a letter he wrote to the Memphis City Council on November 4, 2003, summarizing the trial court's order and recommending that the Council members not consider any additional evidence or arguments. In the letter, Mr. Wade stated that, in his opinion, the trial court was not ordering the Council members to take any particular action, but they should only reconsider the zoning request consistent with the trial court's order. He reiterated that the Memphis City Council should comply with and consider section 138 of the Charter of the City of Memphis, only consider the record before the trial court, and they should not entertain arguments from the applicant or opponents to the zoning request.

The zoning committee refused to hear from Mr. Fisher and refused to consider a memorandum he prepared and sent to the Council members. The committee members once again expressed their confusion as to what was required by the Memphis City Council on remand. The zoning committee voted to send the matter back to the Memphis City Council without a recommendation, and the matter proceeded to the Memphis City Council that same day. Ms. Baker of OPD addressed

the Council members to give them a "brief overview" of the case. Ms. Baker referred to the pattern of zoning in the area, and she reiterated the reasons OPD recommended rejecting the application in 1994. The Council members then proceeded to discuss Flautt & Mann's application for re-zoning. During their discussions, the Council members were conflicted about exactly what action the trial court ordered them to take on remand. Ultimately, at the November 18, 2003, hearing, the Memphis City Council voted to reject Flautt & Mann's application for re-zoning.

On January 20, 2004, Flautt & Mann filed a petition for contempt in the circuit court. Flautt & Mann requested that the trial court find the Memphis City Council in contempt of the court's amended order issued on June 16, 2003. Additionally, Flautt & Mann sought compensatory damages in the amount of $1,500.00 per day from the date of the amended order until such time as the Memphis City Council granted the requested zoning and their attorney's fees. Alternatively, Flautt & Mann noted that, in the amended order, the trial court found that the denial of the requested zoning amounted to a confiscatory taking of its property and requested that the trial court award damages for such taking from November 21, 1995, until the zoning is changed by the Memphis City Council. The City filed a response to the petition for contempt asserting that, on remand, it undertook a good faith effort to comply with the trial court's amended order and, therefore, was not in contempt of the trial court's order.

On April 7, 2004, the trial court entered an "Order Denying Plaintiff's Motion for Contempt and Order Remanding Case to Council for Further Consideration." The court's order provided, in relevant part, as follows:

That on remand of this case to the Council, the Council violated the Court's June 16, 2003[,] Order of remand in the various ways indicated below; but, the transcript of the proceedings before the Council on remand indicates that the Council, relying on advice of counsel, misinterpreted the meaning of the Order, and, for that reason, it is the opinion of the Court that the Defendants were not guilty of such willful contempt as would warrant the invocation against them of the severe monetary sanctions sought by Plaintiff. Accordingly, it is the opinion of the Court that this matter should be sent back to the Council for reconsideration with instructions to the Council to take action consistent with the findings and conclusions contained in the June 16, 2003, Order of this Court, as that Order is interpreted in this Order. This Order is based upon the following findings and conclusions of the Court:

. . . .

The case was appealed and following a two-day trial before this Court in March of 2003, this Court found that the evidence,

-12-

(including approximately 100 admissions of the Defendants), was "overwhelming" that the denial of zoning was improper for a number of reasons set forth in detail in the Court's June 16, 2003, Order.

. . . .

Perhaps, the most important finding of the Court for purposes here was that <u>none</u> of the evidence offered by OPD and the objectors at the '95 [sic] hearing before the Council justified a denial of the zoning requested.

The Court directed that on remand the Council "<u>take action consistent with the findings and legal conclusions contained in the Order</u>." This Order was entered on June 16, 2003.

As required by the Court of Appeals in Hoover, (*Hoover v. Metropolitan Bd. of Zoning,* 955 S.W.2d 52 (Tenn. App. 1997) (PAD 1997), this Court directed the Council that upon remand, it was to hear the case on the record at the hearing before the Council in 1995 AND on the record before this Court at the trial in March of 2003; and, the Council was expressly admonished not to hear "additional evidence" of any kind offered by anyone.

On remand to the Council, the evidence considered by the Council consisted of: a "summary" of the 1995 Council Hearing prepared by the Clerk of the Council under the supervision of the Council's attorney; an "updated" report of OPD; a "current" zoning map; "current" pictures of the area; the testimony of Mary Baker with OPD; and statements of counsel for the Council.

. . . .

The Plaintiff and its attorneys were denied an opportunity to be heard at the meetings of the Council and its Zoning Committee, at which the case was considered, based upon advice of Counsel that the Order of this Court prohibited the Council from permitting the Plaintiff or its attorneys to be heard, which is not so.

Based on these findings, the trial court concluded that the City violated the court's order by entertaining "new evidence," thus stepping outside the record as limited by the trial court on remand; failed to expedite the matter as ordered; failed to give Flautt & Mann a "new hearing" granted in the court's order; and denied the application on remand for reasons that the trial court had already concluded were insufficient reasons for denying the requested zoning. In turn, the trial court ordered as follows:

That because the Council violated the June 16, 2003, Order of this Court in the various ways described herein, the Council is hereby ordered to reconsider the Plaintiff's application at a hearing to be conducted pursuant to the Rules of Procedure of the Memphis City

-13-

Council and the Court's June 16, 2003 [,] order; and, at that hearing, the Council shall take action consistent with the findings and conclusions contained in this Court's Order of June 16, 2003, as interpreted in this Order.

On April 27, 2004, the City filed a notice of appeal to this Court presenting the following issue for our review:

I.      Whether the trial court, in a proceeding for contempt of the court's order in an action for common law certiorari, erred in remanding the matter back to the Memphis City Council for further action when the trial court found that the Appellant's conduct did not constitute contempt of the court's order.

On May 7, 2004, Flautt & Mann filed a motion to alter or amend the judgment with the trial court contesting the court's denial of damages for contempt. The trial court subsequently denied this motion on May 28, 2004.[FN6] Flautt & Mann did not file a notice of appeal in this case, but it has presented the following additional issues for our review: [FN7]

> **FN6.** Pursuant to the Tennessee Rules of Appellate Procedure, a notice of appeal generally must be field within thirty (30) days after entry of the judgment appealed from. Tenn. R. App. P. 4(a) (2003). When a party files a post-trial motion pursuant to Rule 52.02 of the Tennessee Rules of Civil Procedure, "the time for appeal for all parties shall run from the entry of the order denying ... such motion." Tenn. R. App. P. 4(b) (2003). "A prematurely filed notice of appeal shall be treated as filed after the entry of judgment from which the appeal is taken and on the day thereof." Tenn. R. App. 4(d) (2003). Accordingly, the notice of appeal filed by the Appellants has been timely filed.
>
> **FN7.** The Tennessee Rules of Appellate Procedure provide as follows:
> > Except as otherwise provided in Rule 3(e), any question of law may be brought up for review and relief by any party. Cross-appeals, separate appeals, and separate applications for permission to appeal are not required. Dismissal of the original appeal shall not preclude issues raised by another party from being considered by an appellate court.
> Tenn. R. App. P. 13(a) (2003). Accordingly, the issues raised by the Appellee are properly before the Court on appeal.

II.      Whether the trial court erred in denying the Appellee's claim for damages stemming from the Appellant's contempt; and

III.     Whether the trial court erred in denying the Appellee's claim for damages for the unconstitutional taking of its property without compensation.

*Flautt & Mann*, 2005 WL 940568, at *1 - 9.

In the first appeal, we reversed the trial court's ruling on contempt because we found that reliance on advice of counsel is not a defense to contempt. *Flautt & Mann*, 2005 WL 940568, at *10. Because the trial court relied on this defense in refusing to find contempt, we remanded the contempt petition to the trial court to determine whether the contempt was willful. We denied the landowners's appeal regarding the unconstitutional taking, finding that we were without jurisdiction to entertain the issue since the landowners did not appeal the original order.

On remand, the trial court held two hearings where the parties presented arguments, allowed the parties to brief the issues, and took the matter under advisement. On October 9, 2006, the trial court issued a Final Order Adjudging the Defendants to Be in Willful Contempt and Awarding Plaintiff Compensatory Damages, finding:

1. That the Defendants be, and they are hereby adjudged to be in willful contempt of court for their failure to take action consistent with the findings and conclusions contained in the order of this Court of June 16, 2003, in the various ways enumerated in the April 7, 2004 order of this Court[.]

2. That the Defendants be, and they are hereby, ordered to pay to the Plaintiff as compensatory damages for their willful contempt the sum of $1,500 per day from the date of this Court's original amended order on June 16, 2003, until such time as the Council complies with the June 16, 2003 and April 7, 2004 orders of this Court.

3. That the costs of this case be, and the same are hereby, adjudged against the Defendants.

From this Order, the City filed a second appeal with this Court.

### *Issues on Appeal*

The City raises three issues on appeal:

I.     Whether the trial court was without jurisdiction or power to enter its June 16, 2003 Order, such that any finding of contempt of this Order must be vacated?

-15-

II.     Whether the trial court erred in finding Defendants in contempt of the June 16, 2003 Order.

III.    Whether the trial court erred in awarding damages for Defendants' alleged contempt of the June 16,2003 Order?

### *Standard of Review*

"Appellate courts review a trial court's decision to impose contempt sanctions using the more relaxed 'abuse of discretion' standard of review." *McDowell v. McDowell,* No. M2000-00164-COA-R3-CV, 2001 WL 459101, at *5 (Tenn. Ct. App. May 2, 2001) (*no perm. app. filed*) (quoting *Sanders v. Sanders,* No. 01A01-9601-GS-00021, 1997 WL 15228, at *3 (Tenn. Ct. App. Jan.17, 1997) (citing *Hawk v. Hawk,* 855 S.W.2d 573, 583 (Tenn. 1993))). The court of appeals has "appellate jurisdiction over civil or criminal contempt arising out of a civil matter." *See* Tenn. Code Ann. § 16-4-108(b)(1994). We will set aside a court's finding of contempt only if the court abused its discretion. *State ex. rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Group Trust,* 209 S.W.3d 595, 610 (Tenn. Ct. App. 2006) (citing *Hawk*, 855 S.W.2d at 583). Abuse of discretion occurs only when the court applies a wrong legal standard or reaches an illogical decision or a decision that "causes an injustice to the party complaining." *Id.* (quoting *Eldridge v. Eldridge,* 42 S.W.3d 82, 85 (Tenn. 2001)). We must not, however, substitute our judgment for that of the trial court. *Id.* (citation omitted).

### *Discussion*

### *Jurisdiction*

A considerable portion of the parties' arguments are dedicated to discussing the validity and lawfulness of the trial court's June 16, 2003 and April 7, 2004 Orders. We note that neither party appealed the underlying orders that precede this contempt appeal.[1] Both parties concede that they

---

[1] *See Flautt & Mann*, 2005 WL 940568, at *13, where we stated that:

> In any event, we need not address the propriety of the trial court's handling of the original petition filed by Flautt & Mann. Tennessee Rule of Appellate Procedure 3(a) provides that "[i]n civil actions every final judgment entered by a trial court from which an appeal lies to the . . . Court of Appeals is appealable as of right." Tenn. R. App. P. 3(a) (2003). Such appeals are initiated by filing a notice of appeal with the clerk of the trial court. Tenn. R. App. P. 3(e) (2003). The notice of appeal "shall be filed with and received by the clerk of the trial court *within 30 days* after the date of entry of the judgment appealed from." Tenn. R. App. P. 4(a) (2003) (emphasis added). The thirty-day time limit is mandatory and jurisdictional in civil cases. *Albert v. Frye,* 145 S.W.3d 526, 528 (Tenn. 2004); *Binkley v. Medling,* 117 S.W.3d 252, 255 (Tenn. 2003). The Tennessee Rules of Appellate Procedure expressly provide that this Court can neither waive, Tenn. R.App. P. 2 (2003), nor extend, Tenn. R.App. P. 21(b) (2003), the time for filing the notice of appeal. *See Jefferson v. Pneumo Services Corp.,* 699 S.W.2d 181, 184 (Tenn. Ct. App. 1985). The failure of a party to timely file a notice of appeal will deprive this Court of jurisdiction to hear the matter. *Searle v. Pfister,* No. M2000-00731-
>
> (continued...)

-16-

cannot directly appeal the underlying orders, as the time for such an appeal lapsed several years ago. The City, however, argues that if the trial court lacked the jurisdiction to issue the orders, the City may collaterally attack the underlying order.

The City argues that the trial court was without jurisdiction or power to enter its June 16, 2003 order, thus making its finding of contempt void. It is well-settled law that if a court lacks personal or subject matter jurisdiction, "its order would be void, would bind no one, and could be disregarded by any one with impunity." *Aladdin Indus., Inc. v. Associated Transp., Inc.*, 323 S.W.2d 222, 229 (Tenn. Ct. App. 1958); *Brown v. Brown*, 281 S.W.2d 492, 497 (Tenn. 1955) (noting that if a "judgment of the Circuit Court . . . is void for want of jurisdiction, it can bind no one and a disobedience of it would not be a contempt.").

According to the City, the Council was exercising a legislative function when it refused to amend its zoning ordinance based on the landowners' application. The City contends that the trial court had no power to set aside the City Council's legislative zoning decision in 2003 unless it found that there was not *any possible reason* that could be conceived to justify the City Council's decision to leave the ordinance as it was, citing *State ex rel. SCA Chemical Waste Services, Inc. v. Konigsberg*, 636 S.W.2d 430, 437 (Tenn. 1982). The City argues that its decision not to amend its zoning ordinance was supported by multiple and valid reasons, and that the trial court exceeded its power and authority when it rejected all of those reasons. The City posits that because the trial court was without jurisdiction to enter its June 16, 2003 Order, the Order is void and the City cannot be held in contempt for violating it. Resolution of that issue lies in the distinction between a void order, which is subject to collateral attack and a voidable order, which is not subject to collateral attack.[2]

---

[1](...continued)
COA-R3-CV, 2000 Tenn.App. LEXIS 817, at *7-8, 2000 WL 1862841 (Tenn. Ct. App. Dec.21, 2000) (citing *Jefferson,* 699 S.W.2d at 184).

Neither party filed a notice of appeal to this Court seeking to contest the trial court's amended order. Accordingly, this Court cannot examine the correctness of the trial court's order on the original petition filed by Flautt & Mann in this case. In its second issue raised on appeal, Flautt & Mann asserts that, in the amended order, the trial court found that the actions of the Memphis City Council amounted to an unconstitutional taking of its property without compensation,[FN10] but the trial court erred by not awarding damages. Flautt & Mann states that it did not file an appeal regarding the trial court's ruling on the original petition because it "fully expected to get the zoning requested on remand." The "expectations" of a party cannot change the result compelled by the Tennessee Rules of Appellate Procedure. Since Flautt & Mann did not file a timely notice of appeal, this Court is without jurisdiction to entertain this issue. *See Hemontolor v. Wilson County Bd. of Zoning Appeals,* 883 S.W.2d 613, 618 (Tenn. Ct. App. 1994).

[2]"If an action or proceeding is brought for the very purpose of impeaching or overturning a judgment, it is a direct attack upon it. . . . On the other hand, if the action or proceeding has an independent purpose and contemplates some other relief or result, although the overturning of the judgment may be important, or even necessary to its success, then the attack upon the judgment is collateral." *Gentry v. Gentry*, 924 S.W.2d 678, 679-680 (Tenn. 1996) (citations omitted).

(continued...)

*Gentry v. Gentry*, 924 S.W.2d 678, 679 - 680 (Tenn. 1996). An order is void only if the court which issued the order lacked subject matter or personal jurisdiction, or was a violation of due process. *Magnavox Co. of Tenn. v. Boles & Hite Constr. Co.*, 583 S.W.2d 611, 613 (Tenn. Ct. App. 1979) (cert. den. 1979).

We are not persuaded by the City's arguments. While we agree that zoning ordinances and their amendments are legislative acts, courts do have authority over such matters. *McCallen v. City of Memphis*, 786 S.W.2d 633, 639 (Tenn. 1990). As a general rule, "the *exercise of the zoning powers should not be subject to judicial interference unless clearly necessary*." *Id.* at 641 (citations omitted) (emphasis in original). In the *McCallen* case, our Supreme Court stated that "[w]hether the action by the local governmental body is legislative or administrative in nature, the court should refrain from substituting its judgment for the broad discretionary authority of the local governmental body. An invalidation of the action should take place only when the decision is clearly illegal, arbitrary, or capricious." *Id.* at 641-642.

In our previous review of this case, we condemned the practice of joining an appeal (the writ of certiorari) with an original action (the declaratory judgment) and the consideration of both at the trial level. In the instant case, the landowners filed a petition in the circuit court entitled "Petition for Certiorari or, in the Alternative, for Declaratory Judgment."

Our Supreme Court has held that "an action for declaratory judgment, as provided by T.C. A. §§ 29-14-101 - 29-14-113, rather than a petition for certiorari is the proper

---

[2](...continued)

Although the instant case was instituted in the circuit court, an excellent description of when collateral attacks may and may not apply is described in *Gibson's Suits in Chancery*, to wit:

> The Chancery Court is a Superior Court of general Equity jurisdiction, and all of its decrees are presumed to be valid, and this presumption is conclusive against collateral attack, unless it affirmatively appears, on the face of the record itself: (1) that the Court had no general jurisdiction of the subject matter of the litigation; or (2) that the decree itself is wholly outside of the pleadings, and no binding consent thereto is shown in the record; or (3) that the Court had no jurisdiction of the party complaining, in person or by representation of interest; in which case it is void only as to such party, or his privies.
>
> A decree is absolutely void if it appears on the face of the record itself either that the Court had no general jurisdiction of the subject matter, or that the decree is wholly outside of the pleadings, and no consent thereto appears. A decree is void as to any person shown by the record itself not to have been before the Court in person, or by representation. A decree not *prima facie* void is valid and binding, until it is either (1) reversed by the Supreme Court, or by the Court of Appeals; or (2) is set aside on a complaint filed to impeach it.
>
> All decrees not thus appearing on their face to be void are absolutely proof against collateral attack, and no parol proof is admissible on such an attack to show any defect in the proceedings, or in the decree.

William H. Inman, *Gibson's Suits in Chancery* § 15.11 (8th ed. 2004) (footnotes omitted).

remedy to be employed by one who seeks to invalidate an ordinance, resolution, or other legislative action of county, city or other municipal legislative authority enacting or amending zoning legislation."

*Fallin v. Knox County Bd. of Comm'rs*, 656 S.W.2d 338, 342 (Tenn. 1983).

Although the record is not entirely clear as to how the trial court handled the landowners' Petition, it appears that the trial court treated the action as one for declaratory judgment and proceeded accordingly, a procedure approved by our Supreme Court. *See McCallen*, 786 S.W.2d at 640 (applying the *Fallin* rationale in the reverse by permitting a declaratory judgment to be treated as an application for certiorari), *Fallin*, 656 S.W.2d at 342 (permitting an application for certiorari to be treated as a declaratory judgment). In the instant case, the trial court's original and amended orders of the trial court state that the trial court considered the landowners' petition "for common law certiorari, statutory certiorari, and/or declaratory judgment." Additionally, the trial court heard additional testimony by Judson Tepaske - testimony that was not presented at the original Council hearing. The trial court also entertained ten (10) exhibits introduced during the hearing. Furthermore, the trial court's order contains several findings of fact. These actions, taken as a whole, signal the handling of this case as an original action. In both of the trial court's orders, it made a finding that the Council's actions were illegal, arbitrary, and capricious.

We find that the trial court was within its *jurisdiction* and exercising within the confines of due process to hear the case and issue its order based on its review of the case. Thus, the trial court's amended order is not void on its face, and the City cannot collaterally attack it.

### *Willful Contempt*

Next, we turn to the issue of whether the City was in willful contempt of the trial court's amended order, dated April 7, 2004. "The court of appeals also has appellate jurisdiction over civil or criminal contempt arising out of a civil matter." Tenn. Code Ann. § 16-4-108(b); *Freeman v. Freeman,* 147 S.W.3d 234, 242-43 (Tenn. Ct. App.2003). On appeal, we review a lower court's decision regarding the existence of contempt in a particular case for an abuse of discretion. *Hawk,* 855 S.W.2d 573, 583 (Tenn. 1993)(citing *Robinson v. Air Draulics Eng'g Co.,* 377 S.W.2d 903, 912 (Tenn. 1964)); *Freeman,* 147 S.W.3d at 242 (citations omitted).

Because we must review the trial court's decision for an abuse of discretion, an examination of that standard of review is necessary. Justice Koch, formerly a judge on this Court, gave one of the clearest descriptions of what this standard means:

The meaning of the abuse of discretion standard of review has become muddied and imprecise with the passage of time. Appellate courts, seemingly able to recognize abuse of discretion when they see it, rarely attempt to define the standard. They are generally content to fall back on it "to shore up verdict-salvaging opinions" or "to avoid close analysis of hard problems." Rosenberg,

-19-

*Judicial Discretion of the Trial Court, Viewed From Above,* 22 Syracuse L. Rev. 635, 667 (1971); Waltz, *Judicial Discretion in the Admission of Evidence Under the Federal Rules of Evidence,* 79 Nw. U. L. Rev. 1097, 1101 (1984-85).

Our understanding of the nature of judicial discretion and of what constitutes an abuse of discretion has not advanced much during the thirty years since Chief Justice Burnett borrowed the United States Supreme Court's definition of the standard contained in *Langnes v. Green,* 282 U.S. 531, 541, 51 S.Ct. 243, 247 (1931). In a criminal case decided in 1959, and later, in a 1961 civil case, Justice Burnett posed the question "What is meant by discretion?" He gave similar answers in each case, stating:

> We think that it means a sound discretion, exercised, not arbitrarily or willfully, but with regard to what is right and equitable under the circumstances of the law, and directed by the Chancellor's reason and conscience to a just result.

S*outhern Ry. v. Atlantic Coast Line R.R.,* 209 Tenn. 177, 183, 352 S.W.2d 217, 219 (1961); *Ivey v. State,* 207 Tenn. 438, 443-44, 340 S.W.2d 907, 909 (1959). Other than these cases and the ones following them, our published opinions state only that judicial discretion connotes "conscientious judgment, not arbitrary action," *Jenkins v. State,* 496 S.W.2d 521, 523 (Tenn. Crim. App. 1973), and that a court abuses its discretion when it "acts contrary to uncontradicted substantial evidence and ignores all valid criteria." *State v. Windhorst,* 635 S.W.2d 706, 708 (Tenn. Crim. App. 1982).

Trial courts' adjudicative decision-making is never completely shielded from appellate review. *See Knaffl v. Knoxville Banking & Trust Co.,* 139 Tenn. 240, 244, 201 S.W. 775, 776 (1918). However, the abuse of discretion standard is a "review constraining concept" implying less intense appellate review and, therefore, less likelihood of reversal. Louis, *Allocating Adjudicative Decision Making Authority Between the Trial and Appellate Levels: A Unified View of the Scope of Review, the Judge/Jury Question, and Procedural Discretion,* 64 N.C.L.Rev. 993, 1045-46 (1986); Rosenberg, *supra,* at 637.

The standard conveys two notions. First, it indicates that the trial court has the authority to choose among several legally permissible, sometimes even conflicting, answers. Louis, *supra,* at 1038-39; *Southern Fire & Cas. Co. v. Cooper,* 200 Tenn. 283, 286, 292 S.W.2d 177, 178 (1956) (a trial court's discretion is "very wide"). Second, it indicates that the appellate court will not interfere with the trial court's decision simply because it did not choose the alternative the appellate court would have chosen. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex.1985).

Appellate courts have the task of articulating the boundaries of the permissible range of the trial court's options. When the courts refer to an abuse of discretion, "[t]hey are simply saying that either the discretion reposed in the lower court judge was not exercised in conformity with applicable guidelines or the decision was plainly against the logic and effect of the facts before the court." Waltz, *supra,* at 1104.

Discretionary decisions must take applicable legal principles into account. If the trial court misconstrues or misapplies the law, its discretion lacks the necessary legal foundation and becomes an abuse of discretion. *Title Guar. Escrow Serv., Inc. v. Powley,* 2 Haw.App. 265, 630 P.2d 642, 645 (1981); *In re Presentment of Bergen County Grand Jury,* 193 N.J.Super. 2, 471 A.2d 1203, 1207 (1984); *Stewart v. Floyd,* 274 S.C. 437, 265 S.E.2d 254, 255 (1980); *Earl v. Gulf & Western Mfg. Co.,* 123 Wis.2d 200, 366 N.W.2d 160, 163 (Ct.App.1985). Accordingly, "abuse of discretion" may connote an error of law, an error of fact, or an error in the substance or form of the trial court's order. *Coca-Cola Co. v. Tropicana Prods., Inc.,* 690 F.2d 312, 315 (2d Cir.1982).

Appellate courts' deference to trial courts' "discretionary" decisions should not promote result-oriented opinions or seemingly irreconcilable precedents. The law's need for consistency, predictability, and reliability requires the elimination of apparently whimsical authority on both the trial and appellate levels. In order to ensure a rational standard of review, a trial court's discretionary decisions should be reviewed to determine: (1) whether the factual basis of the decision is supported by sufficient evidence; (2) whether the trial court has correctly identified and properly applied the applicable legal principles; and (3) whether the trial court's decision is within the range of acceptable alternatives.

*BIF, a Div. of Gen. Signals Controls, Inc. v. Serv. Constr. Co., Inc.*, No. 87-136-II, 1988 WL 72409, at *1 -3 (Tenn. Ct. App. July 13, 1988).

Before we address whether the trial court abused its discretion, we must look at what the trial court actually ordered the City and Council to do. The order stated that "[t]he Court is not directing the Council to make any specific decision or to vote in any particular way, but is only directing that whatever action is taken be consistent with the findings and conclusions contained herein." The order set aside the Council's decision and remanded the case back to the Council. Citing *Hoover, Inc. v. Metropolitan Board of Zoning Appeals*, 955 S.W.2d 52 (Tenn. Ct. App. 1997), the trial court ordered the Council to conduct a *new* hearing on the landowner's

applications based solely on the trial court's record.[3]  The landowner's application was to be handled as expeditiously as possible.  At that new hearing, the Council was forbidden from considering any additional evidence and was required to take action consistent with the findings and conclusions of the order.

In its finding of contempt, the trial court found that the Council failed "to take actions consistent with the findings of [the trial court]."  Specifically, the trial court found that the Council failed to handle the matter expeditiously and that the Council considered "new" evidence consisting of:  "[a] 'summary' of the 1995 Council Hearing prepared by the Clerk of the Council under the supervision of the Council's attorney; an 'updated' report of OPD; a 'current' zoning map; 'current' pictures of the area; the testimony of Mary Baker with OPD; and statements of counsel for the Council."  Additionally, the trial court found that

> [t]he Plaintiff and its attorneys were denied an opportunity to be heard at the meetings of the Council and its Zoning Committee, at which the case was considered, based upon advice of Counsel that the Order of this Court prohibited the Council from permitting the Plaintiff or its attorneys to be heard, which is not so.

Based on its finding of willful contempt, the trial court ordered the City to pay the landowners the sum of $1,500 per day from June 16, 2003, the date of the trial court's original amended order, until the Council complies with the June 16, 2003, and April 7, 2004 orders.

Citing *American Chariot v. City of Memphis*, 164 S.W.3d 600, 604-605 (Tenn. Ct. App. 2004), the City argues the trial court erred in not allowing the Council to consider additional evidence.  The City argues that the Council "cannot delegate or abrogate its authority to preserve the health, safety, and welfare of the general public," and that not considering updated information for a hearing that occurred approximately eight years prior would be violating those duties.  Additionally, the City argues that the trial court erred by requiring them to conduct a new hearing based upon the trial court's record because the "zoning statutes and ordinances required notice to surrounding landowners, [making] any rezoning without such notice . . . illegal." *See* Tenn. Code Ann. § 13-7-203 (1994).  While the City's arguments may have merit, disobeying the trial court's order is not the proper path to a resolution of this issue.  Rather, appealing the underlying order is the proper path – a path which the City chose not to take.  It is well-settled in

---

[3]The trial court's reliance on *Hoover* in prohibiting additional evidence is misplaced.  *Hoover* deals with an administrative decision, not a legislative one.  In *Hoover*, a quarry operator applied for a conditional use permit.  If he satisfied all of the requisite conditions, his application would be granted.  The main issue in *Hoover* was whether, at that fixed point in time, he had met all those conditions.  Thus, in Hoover, it was proper to have the Council only examine the evidence from that fixed point in time.

Here, the Council was acting as a legislative body.  There is no concrete list of conditions that the landowners could meet and then automatically be rezoned, like in *Hoover*.  Rather, the Council examines the surrounding area to see what activities are taking place in neighboring lands and makes a determination for the public welfare and safety of the city's people.  To do this properly, current information is a necessity.

-22-

Tennessee that "[i]f the Court has jurisdiction of the person and of the subject matter, it is a valid order though it be erroneous, and disobedience of same by a party affected is a contempt of court." *Churchwell v. Callens*, 252 S.W.2d 131, 136 (Tenn. Ct. App. 1952).

We now address whether the factual basis of the trial court's finding of contempt is supported by sufficient evidence. We find that of the three reasons the trial court cites in finding contempt, only one reason has sufficient evidence to merit such finding. Our review of the record reveals that the Council was perplexed as to how to comply with the trial court's order. The Council did forbid the landowners and their counsel to speak, but it appears that this was in effort to comply with the trial court's prohibition of additional evidence. We note that the trial court's July 16, 2003 order is silent as to whether the Council may allow the landowners or their representatives to speak. The order mandates a "new hearing" but prohibits considering new evidence and confines the evidence that the Council may consider to the record before the trial court. Thus, there is not sufficient evidence for finding the City in willful contempt of a mandate that is ambiguous, at best.

Next, we find that the matter was handled expeditiously. The first time the Council entertained the landowners' application for rezoning was in 1995. In 2003, many Council members were new and unfamiliar with the eight (8) year old case. They needed time to review the record and become educated on the issue. Our review of the record reveals that the Council attempted to give the landowners a fair hearing by taking time to review the materials. Additionally, the Council voted on the case at the November 18, 2003 meeting, rather than at the December 2, 2003 meeting, as originally scheduled. Therefore, we hold that the court's finding that the Council's failed to handle the matter expeditiously lacks sufficient evidence.

We do, however, find that the trial court has sufficient evidence in finding the Council in willful contempt for "entertaining new evidence." The record reflects that the Council considered updated and current information. This information is arguably "new" evidence since it was not contained within the record before the trial court. Based on our review of the record, it appears that the trial court has sufficient evidence to find that the Council's actions were in contempt of the trial court's order.

The next issue is whether the trial court correctly identified and applied the applicable legal principles in finding contempt. The punishment for civil contempt is intended to be coercive; the remedy is temporary by nature. *Doe v. Bd. of Prof'l Responsibility of Sup. Ct.*, 104 S.W.3d 465, 474 (Tenn. 2003). Holding an individual in civil contempt is an available remedy "only when the individual has the ability to comply with the order at the time of the contempt hearing." *Ahern v. Ahern,* 15 S.W.3d 73, 79 (Tenn. 2000). "[T]he one in contempt has the 'keys to the jail' and can purge the contempt by complying with the court's order." *Id.* In the instant case, the Council has the "keys" because they were and still are able to comply with the trial court's order (whether erroneous or not) by voting on the landowners' application after reviewing

only the evidence that was available to the trial court. While other portions of the order may have been vague or ambiguous, the mandate to only consider the record before the trial court was perfectly clear. It is clear from the record that the Council reviewed additional material before voting. Holding the City in contempt for going outside of that record was an action within the range of acceptable alternatives. The trial court did not abuse its discretion in finding the City in willful contempt for disobeying its order.

### *Damages*

The final issue is whether the trial court erred in awarding damages for the City's contempt of court. "Fines for civil contempt may either coerce the contemnor to comply with the court order *or* serve to compensate the injured party." *Overnite Transp. Co. v. Teamsters Local Union No. 480*, 172 S.W.3d 507, 511 (Tenn. 2005) (emphasis in original) (citing *City of Chattanooga v. Davis*, 54 S.W.3d 248, 271 (Tenn. 2001)). The amount of damages to be awarded is a question of fact. *Beaty v. McGraw,* 15 S.W.3d 819, 827 (Tenn. Ct. App. 1998), (citing *Sholodge Franchise Sys., Inc. v. McKibbon Bros.*, 919 S.W.2d 36, 42 (Tenn. Ct. App. 1995)). Thus, the standard of review of the amount of damages awarded by a trial court sitting without a jury is the standard generally applicable to appellate review of findings of fact. Under that standard, we review the record *de novo* and afford the trial court's findings of fact a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Murfreesboro Med. Clinic, P.A. v. Udom,* 166 S.W.3d 674, 678 (Tenn. 2005).

Here, we find that the evidence preponderates against the trial court's order that the City pay $1,500 per day from June 16, 2003. The order requires the City to pay that sum until the Council complies with its June 16, 2003 and April 7, 2004 orders. Because the damages stop once the Council complies, our reading of the order reveals that the trial court intended the damages ordered to be coercive in nature. This is an improper use of the coercive fine because it was awarded retroactively, with accrual starting on June 16, 2003, a date that is prior to the finding of contempt. *See, e.g., Shillitani v. United States*, 384 U.S. 364, 370 (1966) (holding that to be considered remedial, sanctions must operate in a prospective manner). Assessing a daily fine from the trial court's finding of contempt until the Council's compliance would be a proper use of the coercive fine. However, ordering the Council to conduct a third hearing under the strict adherence to the trial court's June 16, 2003 order would be illogical and wasteful.

Ordering the council to make a legislative decision based on stale evidence contravenes both justice and public policy. In a city such as Memphis, many things can change in the span of just a few years. New roads might have been constructed, areas may have been annexed, and farmlands could have evolved into a hub of industry. Such changes would undoubtedly affect the Council's decision. None of this is known without examining current and updated information. We affirm the trial court's finding of contempt, but vacate the damages portion. In its stead, we remand the case to the Council for a new hearing. This hearing should follow the proper

-24-

procedure as specified by the Council's rules and regulations, should provide a proper notice and a hearing, and should consider current information.

The judgment of the of the trial court is vacated, and the cause is remanded for further proceedings consistent with this Opinion. Costs of this appeal are assessed one-half to appellant, The Council of the City of Memphis and the City of Memphis, and their surety and one-half to appellee, Flautt and Mann, a partnership.

_____

DAVID R. FARMER, JUDGE