IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 9, 2018 Session

## MELODY CRUNK TELFER v. GEORGE CURTISS TELFER

Appeal from the Chancery Court for Williamson County
No. 38088     James G. Martin, III, Chancellor

_____

### No. M2017-00420-COA-R3-CV

_____

This appeal arises from a divorce case that was appealed and remanded and now once again is back before us. Melody Crunk Telfer ("Wife") filed for divorce from husband George Curtiss Telfer ("Husband") in 2010. A final decree of divorce was entered in 2012. Husband appealed the finding that he lacked a marital interest in two of Wife's business entities. This Court found that the appreciation in value of the entities at issue was marital property subject to equitable division. On remand, the Chancery Court for Williamson County ("the Remand Court") valued the appreciation, divided the marital estate, and awarded Husband attorney's fees. Husband appeals to this Court. We find, *inter alia*, that the approximately 84/16 division of the marital estate in favor of Wife rendered by the Remand Court is inequitable in light of the evidence and the relevant statutory factors. We vacate that portion of the Remand Court's order and remand for a fresh division of the marital estate on a 65/35 basis in favor of Wife. We otherwise affirm the Remand Court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
### Affirmed, in Part, and Vacated, in Part; Case Remanded

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which RICHARD H. DINKINS and W. NEAL MCBRAYER, JJ., joined.

James L. Weatherly, Jr., Nashville, Tennessee, for the appellant, George Curtiss Telfer.

Ralph W. Mello, Nashville, Tennessee, for the appellee, Melody Crunk Telfer.

# OPINION

## Background

As this Court already has had occasion to lay out the factual background of this case in *Telfer 1*, we quote heavily from our earlier opinion. In *Telfer I*, in which we remanded the case for the Remand Court to include the appreciation in value of two of Wife's business entities in the marital estate, this Court stated, in part:

> Plaintiff/Appellee Melody Crunk Telfer ("Wife") and Defendant/Appellant George Curtiss Telfer ("Husband") were married in 1985. Until 2000, Husband worked in the automotive finance and banking industry and Wife worked in sales. During that time, both parties deposited their employment earnings into a joint checking account.

> Wife's father, John Crunk, was the chairman and owner of RJ Young Company. In 1995, Mr. Crunk decided to transfer ownership of some of his assets to Wife through the creation of business entities, in order to avoid the payment of gift and inheritance taxes upon his death. One of the entities Mr. Crunk set up was Crunk Connected Products ("CCP"), a partnership that owned the real estate upon which RJ Young was situated. Mr. Crunk began gifting Wife a percentage of the ownership interest in CCP. By October 1999, by virtue of Mr. Crunk's gifts, Wife owned a 74.8% interest in CCP, valued at $416,795.

> Beginning in 2000, Wife began receiving distributions from CCP in the amount of $8,500 per month. These distributions were deposited into the parties' joint checking account and used to pay marital expenses. These distributions and other income from companies belonging to Wife's family were sufficient to enable Wife to cease working outside the home.

> Subsequently, Mr. Crunk decided to equalize the distribution of his assets between Wife and her brother. To do so, in May 1999, Mr. Crunk created another business entity, Young Leasing, LLC, for the purpose of transferring wealth to Wife. Neither Husband nor Wife was involved in setting up Young Leasing, and Wife was not present when the company was created. The sum of $900 was paid for Wife's 90% ownership interest in the company. Prior to the $900 payment, Young Leasing had no assets. Young Leasing did not immediately make any distributions to Wife, and in fact operated at a loss until 2005.

As a result of the companies set up by Wife's family, the parties had significant tax liabilities. Income reflected on the K-1 statements from CCP and Young Leasing was included in the parties' joint income tax returns. However, from 1999-2006, the parties received no monies from CCP or Young Leasing to pay the increased tax liability incurred as a result of Wife's ownership interest in the companies. Consequently, they paid the increased income taxes with marital funds. It appears from the record that the parties paid the taxes on all of the income generated by CCP and Young Leasing each year, regardless of whether the companies' income was retained or distributed to Wife.

In 2005, for the first time, Young Leasing did not operate at a loss. That year, it earned approximately $619,000; these earnings were retained by the company. This 2005 income was reported on the K-1 statements for Wife, even though the income was not distributed to her. As a result, in 2006, this "phantom" income attributed to Wife, in addition to the parties' other sources of income, generated a personal tax liability of approximately $331,000.

\*\*\*

The financial issues and numerous other factors placed strain on the parties' marriage. In 2010, Wife filed a complaint for divorce in the Chancery Court for Williamson County, Tennessee, alleging irreconcilable differences. Contentious litigation ensued over numerous issues, most of which are not pertinent to this appeal. The litigation included sharp disputes over the primary issues in this appeal, namely, the classification of Wife's companies and their appreciation in value as either separate or marital property, for purposes of equitably dividing the marital estate.

\*\*\*

In the oral ruling, the trial court first made the factual finding that Wife's father intended the two companies to be gifts to Wife and that "she didn't earn it." Thus, the trial court concluded that Wife's ownership interests in the companies were her separate property. It then addressed whether the appreciation in the value of the companies during the marriage should be classified as marital property. The trial court explained its view of the evidence on the distributions made by Wife's companies and the parties' payment of their tax liability, and whether Husband had substantially contributed to the appreciation in value of the companies:

Now, all we have from that cash flow that came out. And [Wife] chose to—I think appropriately, to put that into the joint funds that they had at the bank. They had a joint account.

But the payment of the money from that cash flow for taxes did nothing, in this Court's opinion, to meet the statutory obligation, which is that you must show that there has been by both parties a substantial contribution to the preservation and appreciation of the assets. It didn't do that, and I've listened carefully, and I appreciate the argument to the contrary, but I just respectfully disagree with that. It didn't do a thing to preserve either [CCP] or Young Leasing. It didn't do a thing to preserve that asset in any shape, form, or fashion that this Court can see....

But the mere fact that the cash flows from these [companies] went into a joint account and were used to pay the taxes that naturally come from the income does not preserve the corpus, which is the leasing company and the partnership. Therefore, accordingly, the Court does find that this is not a marital asset, that [Husband] has no interest in, as a matter of law, in Young Leasing or in [CCP].

Thus, the trial court held that the fact that the checks from the companies were deposited into a joint account, and the fact that the payment of the parties' tax liabilities were paid from joint assets, did not amount to a substantial contribution to the appreciation in value of the companies. For that reason, the trial court held that the appreciation in the value of the companies during the parties' marriage was also Wife's separate property, and thus would not be included in the trial court's equitable division of the marital property.

In February 2012, the trial court's oral findings on these issues were incorporated by reference into the written order that adjudicated all of the issues in the divorce litigation. Pertinent to this appeal, the written order held that Wife's interest in both companies was "her separate property when acquired by her and remain her separate property" and that Husband "has no marital interest in either property." Husband now appeals.

-4-

***

As to CCP, similar to *Schuett*, marital funds were used to pay the tax liabilities created by the income that was retained by CCP. Prior to 2006, the parties paid their income tax liabilities associated with CCP with their employment income. In 2006, their tax liabilities arising in part from income retained by CCP but attributed to Wife for tax purposes were paid with marital funds from the liquidated joint brokerage account. At the time, Husband testified, the parties explored the possibility of CCP distributing some of the retained income to Wife to cover the parties' suddenly large tax liabilities, but "the bottom line was that there wasn't going to be a distribution to cover this tax liability." The parties' use of marital funds to cover their tax liabilities arising out of the CCP income that was attributed to Wife but not distributed to her allowed CCP to retain income that could have been utilized to pay the parties' income taxes. This helped preserve CCP and allowed it to grow and appreciate in value. Under these circumstances, we find a causal link between the use of the parties' marital funds and the preservation and appreciation in value of CCP.

***

In 2006, Young Leasing retained income attributed to Wife, and the parties clearly utilized marital funds to pay the associated tax liability. While it was a one-time payment, the amount of the parties' overall tax liability was substantial, $331,000; as was the amount in the joint brokerage account, namely, $317,000 that was inherited by Husband. To be considered a substantial contribution to the preservation and appreciation of a spouse's separate property, the parties' contribution "need not be monetarily commensurate to the appreciation in the separate property's value, nor must [it] relate directly to the separate property at issue." *Wright-Miller v. Miller*, 984 S.W.2d at 944 (citing *Brown*, 913 S.W.2d at 167). Under the circumstances, it is fair to find a causal link between the expenditure of these marital funds in 2006 and the preservation and appreciation in value of Young Leasing in 2006.

In addition, the proof showed that, during the parties' marriage, Husband served as the family's financial manager and Wife had little knowledge of or involvement in their financial matters. Under Section 36-4-121(b)(1)(D), quoted above, substantial contribution may include "the direct or indirect contribution of a spouse as ... family financial manager, together with such other factors as the court having jurisdiction thereof may

determine." Tenn. Code Ann. § 36-4-121(b)(1)(D). This is of particular significance with respect to the payment of the parties' 2006 tax liability, since the proof showed that the unexpected 2005 income attributed to the parties but not distributed to them necessitated hasty action by Husband to cover the parties' suddenly imminent tax liability.

Considering all of these circumstances, we must conclude that the evidence preponderates in favor of a finding that the parties made real and significant contributions to appreciation and preservation of both Young Leasing and CCP. Consequently, we must hold that the appreciation in value of both companies during the marriage is marital property.

This holding requires us to remand the case to the trial court. On remand, the trial court must, of course, equitably divide the appreciation in value of both CCP and Young Leasing during the marriage. In addition, however, adding the appreciation in these companies to the marital estate significantly affects the size of the overall marital estate. Consequently, on remand, the trial court may, in its discretion, reconsider its equitable division of the entire marital estate, in light of all factors it deems relevant.

Finally, Husband seeks an award of attorney fees both at trial and on appeal. After reviewing Husband's arguments, we find no abuse of the trial court's discretion in its denial of Husband's request for attorneys fees below. We respectfully decline to award Husband attorney fees on appeal. The remaining issues raised on appeal are pretermitted.

*Telfer v. Telfer*, No. M2012-00691-COA-R3-CV, 2013 WL 3379370, at *1-2, 5-6, 11-13 (Tenn. Ct. App. June 28, 2013) (footnotes omitted), *Rule 11 appl. perm. appeal denied Oct. 16, 2013*.

The case thus was remanded for division of the marital estate, this time with the appreciation in value of CCP and Young Leasing to be considered among the marital interests. On November 18, 2015, the Remand Court entered an order revising the value attached to Wife's share. The Remand Court, among other things, excoriated Husband's financial stewardship during the marriage, stating as follows in part:

The trial court's division of the marital assets in 2011, resulted in distribution of $540,893 to Ms. Telfer and $510,928 to Mr. Telfer for a total marital estate of $1,051,821. Tbl. 3. This distribution allocated 51% of the marital estate to Ms. Telfer and 49% to Mr. Telfer. Id. Additionally the trial court awarded Mr. Telfer $240,000 in transitional alimony,

-6-

notwithstanding his admitted adultery. Id.; Trial Tr. vol. III, 5, 55 Dec 2011. The alimony payments of $5000 a month for 4 years will be satisfied in December 2015.

***

Mr. Telfer's conduct as the "family's financial manager" can hardly be deemed admirable. This Court cannot, and would not, disagree with the findings of the appellate court. Certainly he used what assets were readily available in 2006 to pay the parties' tax liability for 2005. However, Mr. Telfer lived as if the "Crunk well" would never run dry. He maxed out the line of credit secured by the parties' home, in part, to fund a business venture for which he had no qualifications or experience while pursuing construction of a lake home for his family, which at the time, the parties could ill afford. The trial record is devoid of any evidence showing that Mr. Telfer exercised prudence or caution. . . .His contribution as the family financial manager can only be described as reckless.

***

Absent clear guidance and articulated policy considerations for the exclusion of marketability discounts otherwise routinely applied in the field of business interest valuations, this Court defers to the judgment of the experts in this case, both of whom found they should apply a discount for lack of marketability to Ms. Telfer's partial interest in CCP and Young Leasing to fairly reflect fair market value.

***

The Court agrees with Mr. Price's determination of a fair discount for lack of marketability for the two closely held business interests that takes into account the totality of the information gathered by the experts and establishes a value that reflects the "fair market value." Applying a 7.7% discount to Ms. Telfer's interest in Crunk Connected Products and reducing the result of $4,709,466, by her discounted separate interest of $384,702, the resulting value of her marital interest is $4,324,764. Applying a 10% discount to her interest in Young Leasing, the value of her marital interest is $1,172,384.

***

-7-

In the present case, Mr. Telfer's contribution to the acquisition of Ms. Telfer's interests in CCP and Young Leasing was not "minimal," as in Dalton; it was non-existent. Mr. Crunk, Ms. Telfer's father, established Ms. Telfer's interest in these companies as an early inheritance to allow her to be a stay at home parent. Mr. Telfer made no contribution to the acquisition of Ms. Telfer's interest in these companies whatsoever. Ms. Telfer received them through the generosity of Mr. Crunk, by virtue of his desire to share his net worth with his daughter in the form of an early inheritance. However, similar to Dalton, Mr. Telfer "should receive some credit for the increase in value of Wife's separate property."

\*\*\*

What this Court is called upon to do in this case, is equitably divide the increase in value of Ms. Telfer's interests in CCP and Young Leasing, interests that Mr. Telfer did nothing to generate, except for the tax payment made in April 2006. Thus, as noted above when discussing the Brown case, the issue is how to quantify Mr. Telfer's entitlement to these marital assets. Mr. Telfer asks the Court to award him 50% of the marital interest in CCP and Young Leasing. To do so would be inequitable, and would inappropriately allow Mr. Telfer to continue to reap the benefit of the largess from the Crunk family without any justification other than his status as their son-in-law. Had the Crunk family intended to enrich Mr. Telfer, they could have done so directly.

In keeping with the Court's responsibility to divide the marital interest in CCP and Young Leasing and the overall marital estate in an equitable manner and based upon the facts and circumstances of this case, the Court finds it appropriate to recognize that Mr. Telfer used all of his inheritance from his aunt for the benefit of the parties' finances and estate. In that regard, the Court finds it necessary to consider Mr. Telfer's loss of his inheritance and subsequent investment returns on that inheritance in making an equitable distribution of the marital property. Mr. Telfer has benefitted throughout the marriage from the gifts and financial contributions of Ms. Telfer's family. Similarly, although in a lesser dollar amount, Ms. Telfer has benefitted from the inheritance from Mr. Telfer's aunt. Mr. Telfer's inheritance in the amount of approximately $450,000 was used to purchase the Rock Island lake house lot and to pay the parties' 2005 taxes in April 2006. Ms. Telfer did nothing to generate these funds, just as Mr. Telfer did nothing to generate the early inheritance gifts to Ms. Telfer from her family. Thus, in making an equitable distribution of the Telfer marital property at issue here, the Court must take Mr. Telfer's loss

of his inheritance and investment returns on that inheritance, along with all the facts of the case, into account.

*** 

The Court has considered the facts established by the trial court in December 2011, the additional facts noted by the Court of Appeals, and other facts contained in the trial record which do not contradict or conflict with the findings of the trial court in December 2011, or the Court of Appeals. Based on all of the facts in this case and application of appropriate legal principles, the Court has reconsidered the equitable division of the overall marital estate including the increase in value during the marriage of Ms. Telfer's interest in CCP and Young Leasing. The Court acknowledges Mr. Telfer's position that the Court should equally divide the increase in value in CCP and Young Leasing or make an award to him which approximates an equal division. However, based upon careful consideration of all the applicable factors set forth in Tennessee Code Annotated section 36-4-121, the Court finds that such a division would be inequitable. Accordingly, the Court has determined that Ms. Telfer will retain her interest in Young Leasing and CCP, as well as the other assets awarded her at the trial of this case in December 2011; that Mr. Telfer will retain all of the assets awarded him at the trial of this case in December 2011; and that Ms. Telfer will pay Mr. Telfer an additional $600,000 as his equitable share of the marital estate, including the increase in value of CCP and Young Leasing. Payment shall be made by Ms. Telfer to Mr. Telfer in the amount of $10,000 per month for 60 months. The first payment shall be made on January 1, 2016, and subsequent payments shall be made on the first day of each month thereafter, until the entire $600,000 has been paid to Mr. Telfer.

(Footnotes omitted).

In April 2016, the Remand Court entered an order resolving all outstanding issues in the case save for whether Husband should be awarded attorney's fees. The Remand Court stated, in part:

This case is before the Court on remand from the Court of Appeals. The Court issued a *Memorandum and Order* on November 18, 2015, believing that all that remained to complete the mandate of the Court of Appeals was to allow Mr. Telfer to make an offer of proof concerning the

-9-

value of real properties owned by Crunk Connected Products (hereinafter "CCP") as of December 7, 2011, the date of the original trial in this case.

After issuing its November 18, 2015 *Memorandum and Order*, the Court determined that it had erred in excluding testimony Mr. Crunk desired to offer to rebut the testimony of Mr. Eric Boozer, the real estate appraisal expert called to testify on behalf of Ms. Telfer, concerning the value of the CCP real property holdings as of June 30, 2011. The Court determined that it should reopen the record to allow Mr. Telfer to offer this testimony. Accordingly, on December 9, 2015 the Court heard testimony from Mr. James E. Lamb, MAI. On February 19, 2016, the Court heard further testimony of Mr. Eric Boozer responding to the December 9, 2015, testimony of Mr. Lamb.

\*\*\*

Mr. Telfer contracted Mr. Lamb to conduct his appraisal reviews in January or February 2014, long after the conclusion of the December 7, 2011 trial. He completed (1) the review of Mr. Boozer's appraisal of 805 Division Street on February 26, 2014; (2) the review of Mr. Boozer's appraisal of 810 Division Street on February 27, 2014; (3) the review of Mr. Boozer's appraisal of 809 Division Street on March 3, 2014; and (4) the review of Mr. Boozer's appraisal of 2919 Sidco Drive on March 7, 2014. In addition, Mr. Lamb was present in Court May 15, 2015 and heard Mr. Boozer's testimony concerning his June 30, 2011 appraisals. Mr. Lamb prepared reports reflecting the results of his reviews, which were offered and received into evidence as Exhibits 18 — 21 on December 9, 2015.

On December 9, 2015, Mr. Lamb testified that he was prepared to offer testimony regarding his appraisal reviews on May 15, 2015 had the Court allowed him to do so. The Court erred in not allowing Mr. Lamb's testimony on May 15, 2015. To remedy this error, the Court heard testimony from Mr. Lamb on December 9, 2015.

\*\*\*

After issuing its November 18, 2015 *Memorandum and Order*, however, the Court determined that it had erred in excluding Mr. James E. Lamb's testimony concerning the value of the CCP real property holdings as of June 30, 2011. The Court reopened the record for Mr. Telfer to offer Mr. Lamb's testimony. Following the Court's evaluation of the conflicting

expert testimony, the Court has now rejected the testimony of Mr. Lamb and accepted the testimony of Mr. Boozer.

Mr. Tom Price, CPA, also testified on February 19, 2016 as part of Mr. Telfer's offer of proof concerning the value of Ms. Telfer's interest in CCP based on post June 30, 2011 facts. Mr. Price corrected the Court and noted that the Court relied on Mr. Boozer's appraisal as of June 30, 2011 in its November 18, 2015 *Memorandum and Order* and erroneously applied a 7.7% discount for lack of marketability to the entirety of CCP interests. Accordingly, the Court modifies its November 18, 2015 *Memorandum and Order* to eliminate the 7.7% marketability discount as it pertains to the Division Street properties owned by CCP. As a result of this correction, the Court adjusts Mrs. Telfer's marital property interest in CCP to $4,659,19[1]. Ms. Telfer's previously stipulated to separate property interest in CCP remains $416,795.

The Court finds this modification of the value of Ms. Telfer's marital interest in CCP, though material, does not affect the Court's reasoning and conclusions set forth in the Court's November 18, 2015 *Memorandum and Order*. The Court's decision regarding the equitable division of the overall marital estate, including the increase in value during the marriage of Ms. Telfer's interest in CCP and Young Leasing, remains unchanged. The Court reserves the issue of Mr. Telfer's request for attorney's fees.

(Footnotes omitted).

In September 2016, the Remand Court entered an order granting Husband attorney's fees, stating, in part:

Since the remand order from the Court of Appeals entered in June 2013, Mr. Telfer has incurred attorney's fees and expenses in the amount of $165,014.78. *Affidavit of James L. Weatherly, Jr.*, March 9, 2016. Mr. Telfer incurred these fees over a period of two and a half years which included numerous motions and court appearances, consultation and work with expert witnesses, extensive trial court briefings, and five days of trial court proceedings on the remand hearings. Combined with expenses related to expert witnesses, the total cost of Mr. Telfer's success on remand totals approximately $235,000.00. The Court notes that this amount is only slightly less than $240,000.00 — the amount awarded to Mr. Telfer as transitional alimony as a result of the initial proceedings. The Court based this award of transitional alimony on Mr. Telfer's need and Ms. Telfer's ability to pay, as shown by their respective incomes and expenses, as well

as the value of Ms. Telfer's separate estate.  *See Order*, February 1, 2012.  The Court did not, however, make this award in anticipation of attorney's fees relating to future proceedings and Mr. Telfer's success in obtaining an equitable share of in the increase in value in Ms. Telfer's ownership interest in Crunk Connected Products and Young Leasing.  Therefore, the Court now considers Mr. Telfer's request for attorney's fees in light the entirety of proceedings, the provisions set forth in Tenn. Code Ann. § 36-5-121, and, specifically, the result of the remand hearings.

\*\*\*

The recent litigation in this matter involved Mr. Telfer's effort to obtain an "equitable share" of the increase in value in Ms. Telfer's ownership interest in CCP and Young Leasing.  Ms. Telfer contested Mr. Telfer's efforts to be awarded any portion of her ownership interests at the divorce trial, on appeal, and in these remanded proceedings, resulting in protracted and expensive litigation.  Mr. Telfer remains the economically disadvantaged spouse in this matter under Tenn. Code Ann. § 36-5-121 et. seg.  To require Mr. Telfer to pay his attorney's fees and expenses from his additional award of $600,000 would seriously erode the value of the additional marital asset awarded Mr. Telfer.

Accordingly, the Court finds that Mr. Telfer should be awarded attorney's fees and expenses as alimony in solido.  The Court afforded Ms. Telfer the opportunity to contest the reasonableness of attorney's fees and expenses sought by Mr. Telfer.  Ms. Telfer, however, declined to do so.  Accordingly, the Court has reviewed Mr. Weatherly's affidavit and finds the amount of $165,014.78 to be reasonable, thoroughly documented, and adequately supported.

\*\*\*

The Court in this matter, has extensively reviewed the record, including Mr. Telfer's March 9, 2016 and April 20, 2016 filings and Ms. Telfer's May 4, 2016 reply in opposition, complied with the requirements of the discretionary standard under Tenn. R. Civ. P. 54.04, and determined that Mr. Telfer is entitled to discretionary costs. Mr. Telfer is the "prevailing party."  The Court therefore awards discretionary costs to the extent authorized under Tenn. R. Civ. P. 54.04. *See Stalsworth v. Grummons*, 36 S.W.3d 832, 835 (Tenn. Ct. App. 2000).  Accordingly, the Court **PARTIALLY GRANTS** the *Motion for Discretionary Costs* filed by Defendant, George Telfer, and awards the following: (1) $11,863.80 in

expert witness fees for services rendered by Tom Price; (2) $5,237.50 in expert witness fees for services rendered by James Lamb; and $5,645.00 for court reporters. The Court additionally **AWARDS** Mr. Telfer alimony in solido for the reasons set forth in this *Memorandum and Order*, in the amount of $165,014.78.

In February 2017, the Remand Court denied Husband's motion to grant post-judgment interest and motion to amend. Husband timely appealed to this Court.

## Discussion

We restate and consolidate the issues Husband raises on appeal as follows: whether the Remand Court erred in its valuation and division of the marital estate. Wife raises her own issue of whether the Remand Court erred in awarding attorney's fees to Husband.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001). The issues on appeal implicate the abuse of discretion standard. In *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515 (Tenn. 2010), the Supreme Court discussed the abuse of discretion standard at length, stating:

> The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal. *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009); *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000). It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999). Thus, it does not permit reviewing courts to second-guess the court below, *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999), or to substitute their discretion for the lower court's, *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002).

Discretionary decisions must take the applicable law and the relevant facts into account. *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007). A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence. *State v. Ostein*, 293 S.W.3d 519, 526 (Tenn. 2009); *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d at 358; *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d at 42.

To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions. *Flautt & Mann v. Council of Memphis*, 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008) (quoting *BIF, a Div. of Gen. Signal Controls, Inc. v. Service Constr. Co.*, No. 87-136-II, 1988 WL 72409, at *3 (Tenn. Ct. App. July 13, 1988) (No Tenn. R. App. P. 11 application filed)). When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the lower court's legal determinations de novo without any presumption of correctness. *Johnson v. Nissan N. Am., Inc.*, 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004); *Boyd v. Comdata Network, Inc.*, 88 S.W.3d at 212.

*Beecher*, 312 S.W.3d at 524-25.

We first address Husband's issue of whether the Remand Court erred in its valuation and division of the marital estate. Husband argues: (1) the Remand Court should have valued the marital interests as of either the date of the divorce or the date of the remand hearing; (2) The Remand Court erred in applying a discount for lack of marketability to the two business entities at issue; and, (3) the Remand Court should have made its judgment retroactive to the date of divorce and that the judgment should bear

-14-

post-judgment interest.  Husband argues further that the overall division of the marital estate is inequitable.

A trial court has wide discretion in dividing the interest of the parties in marital property. *Barnhill v. Barnhill*, 826 S.W.2d 443, 449 (Tenn. Ct. App. 1991). As noted by this Court in *King v. King*, when dividing marital property:

> The trial court's goal in every divorce case is to divide the parties' marital estate in a just and equitable manner.  The division of the estate is not rendered inequitable simply because it is not mathematically equal, *Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Ellis v. Ellis*, 748 S.W.2d 424, 427 (Tenn. 1988), or because each party did not receive a share of every item of marital property.  *Brown v. Brown*, 913 S.W.2d [163] at 168.... In the final analysis, the justness of a particular division of the marital property and allocation of marital debt depends on its final results. *See Thompson v. Thompson*, 797 S.W.2d 599, 604 (Tenn. App. 1990).

*King v. King*, 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998) (quoting *Roseberry v. Roseberry*, No. 03A01-9706-CH-00237, 1998 WL 47944, at *4 (Tenn. Ct. App. Feb. 9, 1998), *no appl. perm. appeal filed*).

Our Supreme Court has instructed regarding the process by which marital property is divided:

> [M]arital property must be divided equitably between the parties based on the relevant factors enumerated in Tennessee Code Annotated section 36-4-121(c) without regard to fault on the part of either party.  Tenn. Code Ann. § 36-4-121(a)(1).  Section 36-4-121(a)(1) requires an *equitable* division of marital property, not an *equal* division.  *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002).

*Larsen-Ball v. Ball*, 301 S.W.3d 228, 231 (Tenn. 2010) (emphasis in original).

Tennessee Code Annotated § 36-4-121(c) (Supp. 2016)[1] provides:

---

[1] Effective July 1, 2017, some months after the final order in this case, Tenn. Code Ann. § 36-4-121 was amended by the addition of new factor (10), which specifically addresses discounts for lack of marketability: "In determining the value of an interest in a closely held business or similar asset, all relevant evidence, including valuation methods typically used with regard to such assets without regard to whether the sale of the asset is reasonably foreseeable.  Depending on the characteristics of the asset, such considerations could include, but would not be limited to, a lack of marketability discount, a discount for lack of control, and a control premium, if any should be relevant and supported by the evidence."

(c) In making equitable division of marital property, the court shall consider all relevant factors including:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

Regarding discounts for lack of marketability, this Court has explained as follows:

Valuation experts apply discounts for lack of marketability to reflect the lack of liquidity of an ownership interest, i.e. how quickly and easily it can be converted into cash. Patrice L. Ferguson & John E. Camp, *Valuation Basics and Beyond: Tackling Areas of Controversy*, 35 Fam. L.Q. 305, 324 (2001). Thus, experts consider using this type of discount when no ready market exists for an interest or when the provisions in a partnership agreement restrict the ability of a partner to liquidate the interest. Edwin T. Hood et al., *Valuation of Closely Held Business Interests*, 65 UMKC L.Rev. 399, 449-50 (1997). Generally, applicability of the use a lack of marketability discount depends on the characteristics of the ownership interest being valued, not whether the owner of the interest actually intends to sell the interest. *See id*.

In the context of a proceeding involving the valuation and division of marital assets, courts sometime find application of a lack of marketability discounts inappropriate, but in many instances, the decision to apply the discount is seen as discretionary. *See* Stephen A. Hess, Annotation, *Use of Marketability Discount in Valuing Closely Held Corporation or Its Stock*, 16 A.L.R.6th 693 (2006). We also conclude the decision is discretionary and dependent on the facts of the case. *See, e.g., Barnes v. Barnes*, No. M2012-02085-COA-R3-CV, 2014 WL 1413931, at *9 (Tenn. Ct. App. Apr. 10, 2014), *appeal denied* (Sept. 18, 2014) (finding lack of marketability discount inappropriate under the facts); *Halliday v. Halliday*, No. M2011-01892-COA-R3-CV, 2012 WL 7170479, at *5 (Tenn. Ct. App. Dec. 6, 2012) (finding lack of marketability discount applicable to husband's interest in one limited liability company but not to husband's interest in another limited liability company based on the facts). Under the facts of this case, we find no abuse of discretion in the trial court's application of a "slight" discount for lack of marketability for one general partnership but not applying a discount for the other two. "Placing a value on a minority interest in a business is not an exact science." *Owens v. Owens*, 241 S.W.3d 478, 489 (Tenn. Ct. App. 2007). This same logic applies to valuation of a minority interest in a general partnership. "Since valuation evidence is inherently subjective, a trial court's valuation decisions need not coincide precisely with the valuation opinions offered into evidence." *Id*.

Here, the trial court's determination of value is within the range of evidence offered by the parties. The court heard the testimony of the appraisers and found the appraised values closer to the date of the hearing were more accurate. The timing of the valuation of marital assets is within the trial court's discretion. *Wallace*, 733 S.W.2d at 106. The court also found Mr. Pritchett erroneously deducted cost of sale when appraising the subdivisions. Mr. Wallace agreed his final value would increase if the appraised values he used were artificially low. The court also had additional evidence in this record, including the testimony of Vernon Weakley and Husband's personal financial statements, that evidenced a value higher than the value found by Mr. Wallace. Resolving this type of factual dispute is uniquely the role of the trial court. *See Powell v. Powell*, 124 S.W.3d 100, 104-05 (Tenn. Ct. App. 2003). We cannot say the evidence preponderates against the court's decision.

*Grant v. Grant*, No. M2014-01835-COA-R3-CV, 2016 WL 2898434, at *6-7 (Tenn. Ct. App. May 12, 2016) (footnote omitted), *no appl. perm. appeal filed*.

With respect to the valuation of the marital interests, the applicable standard of review is deferential. The Remand Court heard the evidence and concluded that a discount for lack of marketability was appropriate in regards to CCP and Young Leasing, LLC. As we determined in *Grant*, whether to use a discount for lack of marketability "depends on the characteristics of the ownership interest being valued, not whether the owner of the interest actually intends to sell the interest" and "the decision is discretionary and dependent on the facts of the case." *Id*. at *6. From our review of the evidence relevant to the "characteristics of the ownership interest being valued . . . ," we find no reversible error in the Remand Court's use of a discount for lack of marketability.

Regarding the date of valuation, we note that the parties stipulated initially that June 30, 2011 would be the date that their retained experts would employ. Although the case since has dragged on considerably past the final divorce hearing and decree, we see no reason to disregard the original stipulated date. Finally, in view of our resolution of this appeal, we find moot Husband's issue of whether post-judgment interest should be granted.

Having declined to disturb in any way the Remand Court's valuation of the marital interests, we move now to the overall division of the marital estate. Our review is hampered somewhat by the lack of clarity in the succession of orders below as to final values arrived upon. At oral arguments, the parties agreed generally that the marital estate is worth approximately $6.8 million—in any event, certainly north of six million

dollars. The marital portion of the assets in dispute constitute around $5.8 million, of which Husband received $600,000. Husband's calculations reflect an 84/16 division of the entire marital estate in favor of Wife. Wife denies that the discrepancy is so dramatic, instead stating that the division merely is 80/20 in favor of Wife. While our own calculations indicate that Husband is nearer the mark, the resulting breakdown staggeringly favors Wife whichever proportion put forward by the parties is adopted.

The Remand Court focused a great deal on the relative financial contributions of the parties in dividing the marital estate. We believe that the Remand Court, in dividing the appreciation of the business entities this Court instructed be included in the marital estate, lost sight of the forest for the trees. This was a long-term marriage, in which Husband exercised a great deal of the financial decision-making. If Husband, like Wife, benefitted from Wife's family's largesse, that does not serve to undermine all the otherwise relevant statutory factors such as the economic circumstances of Husband and Wife when the division of the estate becomes effective and the duration of the marriage. We also note that if Husband had been successful rather than unsuccessful financially, there is little question that the fruits of his success would be fair game for equitable division. As long as it does not rise to the level of dissipation, spouses share the results not just in successful financial decisions but also in the unsuccessful ones.

We are very much disinclined to tinker with a lower court's decisions regarding the division of a marital estate. However, the 84/16 division of the marital estate in this case is extreme and inequitable resulting in an injustice to Husband. The factual basis for the Remand Court's division of the marital estate is not properly supported by evidence in the record. Further, the Remand Court did not properly identify and apply the most appropriate legal principles applicable to the equitable division of the marital estate. We vacate the Remand Court's division of the marital estate, and remand for a new division that will award 65% of the entire marital estate to Wife and 35% to Husband. To emphasize, it does not matter how the court below divides a particular marital asset because ultimately it is the overall division of the entire marital estate that must be equitable, a fact seemingly lost in this drawn-out case. We have determined a 65/35 division in favor of Wife is an equitable division in light of all the evidence applied to the relevant factors as discussed above.

We next address Wife's issue regarding whether the Remand Court erred in awarding Husband attorney's fees. With respect to the award of attorney's fees in divorce cases, our Supreme Court has stated:

> It is well-settled that an award of attorney's fees in a divorce case constitutes alimony in solido. The decision whether to award attorney's fees is within the sound discretion of the trial court. As with any alimony

-19-

award, in deciding whether to award attorney's fees as alimony in solido, the trial court should consider the factors enumerated in Tennessee Code Annotated section 36-5-121(i). A spouse with adequate property and income is not entitled to an award of alimony to pay attorney's fees and expenses. Such awards are appropriate only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses or the spouse would be required to deplete his or her resources in order to pay them. Thus, where the spouse seeking such an award has demonstrated that he or she is financially unable to procure counsel, and where the other spouse has the ability to pay, the court may properly grant an award of attorney's fees as alimony.

*Gonsewski v. Gonsewski*, 350 S.W.3d 99, 113 (Tenn. 2011) (citations omitted).

The Remand Court, quoted above, detailed its rationale for awarding Husband his attorney's fees. We find no reversible error in the Remand Court's award of attorney's fees to Husband. We decline, however, to award any attorney's fees related to this appeal as Husband will, after this remand, have adequate property to pay his additional attorney's fees and expenses.

## Conclusion

The judgment of the Remand Court is affirmed, in part, and vacated, in part, and this cause is remanded to the Remand Court for further proceedings as necessary and for entry of a final judgment dividing the already established marital estate consistent with this Opinion. The costs on appeal are assessed against the Appellee, Melody Crunk Telfer.

_____
D. MICHAEL SWINEY, CHIEF JUDGE