IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 16, 2025 Session

## ROBERT L. DAVIS, ET AL. v. KAREN EDWARDS, ET AL.

**Appeal from the Circuit Court for Bradley County**
**No. V-22-067     J. Michael Sharp, Judge**

_____

**No. E2024-01736-COA-R3-CV**

_____

This appeal concerns a driveway easement.  Robert Davis and Lala Davis ("Plaintiffs," collectively) sued their neighbor Karen Edwards ("Edwards") in the Circuit Court for Bradley County ("the Trial Court") to enforce an oral agreement whereby Edwards agreed to build her own driveway on her property.  Edwards had been using Plaintiffs' driveway under the terms of the Driveway Easement and Maintenance Agreement ("the DEMA"), an express easement agreed to by Plaintiffs and Jeanette Schlaeger ("Schlaeger"), the previous owner of Edwards' property.  After a hearing, the Trial Court found that Edwards had reached a verbal agreement with Plaintiffs to build her own driveway, and that she must build it.  Plaintiffs filed a motion for additional findings asking that the DEMA be terminated even though that was not an issue at trial.  The Trial Court granted Plaintiffs' motion on grounds that the DEMA was meant to be temporary despite the DEMA's unambiguous language to the contrary.  Edwards appealed.  Subsequently, Joe Hamby and Amber Hamby ("Defendants") bought Edwards' property and were substituted as appellants.  We hold, *inter alia*, that the DEMA is permanent and runs with the land.  The Trial Court abused its discretion in granting Plaintiffs' motion for additional findings.  We reverse the Trial Court's judgment nullifying the DEMA.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed;**
**Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and KRISTI M. DAVIS, JJ., joined.

Joshua H. Jenne, Cleveland, Tennessee, for the appellants, Joe Hamby and Amber Hamby.

Robert G. Norred, Jr., and Chandler I. McNabb, Cleveland, Tennessee, for the appellees, Robert Davis and Lala Davis.

# OPINION

## Background

In February 2022, Plaintiffs sued their neighbor Edwards in the Trial Court. According to the complaint, Plaintiffs' property is adjacent to Edwards' property, with road frontage on Highway 11 in Charleston, Tennessee. Edwards' property previously was owned by Schlaeger, a family relation of Plaintiffs. In September 2020, Edwards attempted to buy Schlaeger's property. However, Edwards' lender required that the property have a driveway easement for access from Highway 11. The property lacked its own driveway. Edwards then approached Plaintiffs about obtaining an easement to use their driveway. Plaintiffs alleged that an oral agreement was reached whereby Edwards would build her own driveway on her property. Plaintiffs alleged further that Edwards agreed the driveway would be completed within one year. According to Plaintiffs, despite the oral agreement, Edwards failed to complete or even begin the driveway. Plaintiffs alleged that they were damaged by Edwards' failure to act. Plaintiffs asked the Trial Court to order Edwards to specifically perform the agreement by building the driveway. Alternatively, Plaintiffs asked for up to $50,000 in damages for Edwards' breach of the agreement. In June 2022, Edwards filed an answer in opposition to Plaintiffs' complaint.

Besides their dealings with Edwards, Plaintiffs had previously been in litigation with Edwards' predecessor in title, Schlaeger. In September 2020, Plaintiffs and Schlaeger reached an agreement, signing the DEMA. Plaintiffs were the grantor and Schlaeger the grantee. The DEMA provides, in relevant part:

> **WHEREAS**, Grantee is in the process of selling a portion of her property to third-party buyers, being Karen Diane Edwards and husband, Thomas Ray Edwards, III; and in anticipation of said sale, a boundary survey was prepared. . . .
>
> **WHEREAS**, Grantee is selling that portion of the Dominant Property as shown on said survey to third parties, and the parties desire to settle and establish rights to use the driveway as depicted by survey; said approximate location of said driveway being hereinafter referred to as "Easement Area"; and
>
> **NOW THEREFORE**, Grantor and Grantee hereby establish a Driveway Easement and Maintenance Agreement to create easement rights in and to the Easement Area and Driveway including rights of access to reach

-2-

said Easement area for its use, enjoyment, maintenance, and/or repair. For and in consideration of the premises and the mutual benefits derived from the easement, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, **Grantor**, by these presents, does hereby grant and convey unto **Grantee**, her heirs and assigns forever, **a permanent exclusive easement** for the use of the Easement Area and driveway; said Easement Area located on Servient Property and further for benefit of Dominant Property. This easement shall be perpetual, shall run with the land and shall be for no other purpose than that specifically expressed herein.

The repair and maintenance of the Driveway and Easement Area shall be a mutual burden of Grantor and Grantee, their heirs and assigns, as to their proportionate use of said Easement Area. The parties owe an affirmative duty to one another, their heirs and assigns, to keep the Driveway and Easement Area in a good state of repair, both functionally and aesthetically. As used herein, the singular shall include the plural, the plural the singular, and any gender all other genders.

In Edwards' answer to Plaintiffs' complaint, Edwards argued that the DEMA was controlling. She also denied having agreed to build a driveway within a year's time. Edwards asserted, among other things:

[A]s the result of the difficulties and problems caused by Plaintiffs to Defendant's predecessor in title, Defendant, as a matter of personal preference, did entertain the possibility or prospect of constructing a separate driveway to serve her home, the sole objective of which was to avoid the continuation of Plaintiff Robert Lynn Davis' harassment, annoyance and attempts to threaten and intimidate Defendant regarding use of the shared driveway for access to her home.

Edwards continued: "While . . . Defendant has contemplated the possibility or prospect of constructing a new driveway, the same is Defendant's prerogative, exclusively, as to if and when same would ever be constructed and which has absolutely nothing to do with Plaintiffs Davis."

This case was tried in February 2023. Plaintiffs testified, as did Edwards. Notably, Plaintiffs' trial counsel took the position that the DEMA was permanent.[1] Plaintiffs' trial counsel stated in his opening remarks:

---

[1] Plaintiffs are represented by different attorneys on appeal.

Mr. Davis also showed up. He gave his testimony that he didn't even read it because he trusted his wife, so he signed that document which conveyed a perpetual easement to Ms. Karen Edwards from this roadway, henceforth forevermore, but with a promise from her that she was going to put in a driveway on her property within one year.

***

Now, one thing that's not at issue is just the set of circumstances based on the parties' agreement. We are not asking that the perpetual easement be set aside, the one to the Davises' property. It exists as it is written, henceforth forevermore, consistent with those terms.

Robert Davis took the stand and testified that Edwards approached him with a request to use his driveway. Edwards' property once belonged to the Schlaegers, whom Mr. Davis was related to by marriage. Robert Davis said that Edwards promised to build her own driveway within a year's time:

Q. So in that conversation, did Ms. Edwards talk more about the driveway or anything to do with her purchase of the [Schlaeger] property?
A. Yes. She told us she couldn't get the money. If we didn't sign an agreement letting her have a right-of-way on that road, the bank wouldn't let her have the money and she wanted us to go sign it.
Q. And did she say anything about the driveway that she was going to put in?
A. Yes, she was still going to put it in.
Q. All right. When she was talking about this idea of the easement and what needed to be signed for her to get lending, did she say anything about how there was a connection between that and then her putting in the driveway?
A. No.
Q. Okay. She didn't -- so with regard to the easement, was -- would you have put in or agreed to the easement agreement, if she didn't put in the driveway?
A. No. No way. And I wouldn't have agreed if it was more than a year either.

***

Q. Okay. And so when you became aware that she had moved in, did you end up having conversations with her about this roadway that you believed

-4-

she was supposed to put in?

A. I never talked to her but one time, and that was the end of the year or about it.

Q. So just for clarity, when you say at the end of the year or about it, why were you talking to her at that point in time?

A. I called her and asked her if she had found anybody to do it. I said, you got 30 days, and she just got mad at me. That was it. She told me she wasn't going to put it in, period.

Q. And did she elaborate about why she wasn't going to put it in?

A. No.

Q. And you said that she was mad at you?

A. Oh, yeah, she got mad at me because I called her.

Q. Was --

A. Threat --

Q. Did she indicate any other reason that she was mad?

A. No, told me never to call her again. I told her I wouldn't. I said you will.

Q. You as in who?

A. My attorney.

Robert Davis acknowledged that there was no writing showing an agreement whereby Edwards would build her own driveway within a year's time. He said he simply trusted her. Asked if he understood that the "permanent access" that was established was going to remain, Robert Davis answered yes. Following Robert Davis's testimony, his wife, Lala Davis, testified as well. Lala Davis said that she never would have signed the DEMA had Edwards not agreed to build her own driveway.

Edwards testified last. Edwards testified, in part:

Q. Now, according to the plaintiffs, Mr. and Mrs. Davis, I'm not trying to put words in their mouth, but, essentially, they're saying that you said if I can use your existing road, I promise to put in a new driveway within a year. What's your response to that?

A. There was never a time frame. What I, actually, literally said was my husband has to sell his home before he moves out here and that will liquidate us to put a driveway in, leading to like the backside of the property where we intend to have cattle. And there was no talk of a divorce during that time. I had no way of knowing that he would want a divorce, you know --

Q. Sure.

A. -- and so it never came through. There was no sale of the house, which was a contingency. There was no husband move out to the farm. That was a contingency. There was no cattle, there's no need for a driveway.

Q. All right. I believe there was testimony earlier about any conversations at all between you, Mr. and Mrs. Davis by phone or in person, after you bought the property. Did any conversations ever transpire?
A. Two phone calls from Mr. Davis, and when he called the first time, he said, you've got five months to get that driveway in, and at that point I did not -- I thought that the document being signed remedied that situation.
Q. What document?
A. The maintenance agreement between the [Schlaegers] and the Davises.
Q. Okay. When did this phone call take place?
A. Probably about six months after I had lived in the home, he started. It was, to me, harassing call, aggressive call. He said I was mad at him. I was upset that he was harassing and threatening, I'm going to sue you, I'm going to sue you.

On cross-examination, Edwards was pressed whether she had an agreement with Plaintiffs. Edwards acknowledged having a "discussion" with them.

In April 2023, the Trial Court entered an order finding in Plaintiffs' favor. The Trial Court found specific performance was the appropriate remedy and ordered Edwards to build a driveway. In its order, the Trial Court found, in part:

> The court finds that these parties had a verbal binding agreement. The court finds that Ms. Edwards has in fact breached the parties verbal contract agreement. The court finds there was a meeting of the minds and an agreement, and Ms. Edwards has not kept her part of the agreement.

***

> The court finds that the parties had a meeting of the minds, and thus an enforceable contract, (A) as to their agreement, and (B) as to a general time limit as to when the agreement would be fulfilled. The court finds that Ms. Edwards' belief, at the time she made the agreement, was that her husband would sell his home within a reasonable period of time, just as she stated. Based upon her belief that the home would be sold in the early spring of 2021, the court finds she represented to the Davis' that she would in fact build the driveway either in the late spring or early summer of 2021. The court finds that was what she stated, and the court further finds that the agreement was to have been completed within a one-year period. However, due to possibly unexpected marital difficulties in the Edwards'

home/marriage, and likely due to the fact that Ms. Edwards did not have the use of the funds from the sale of her husband's home that she expected when she made the agreement, Ms. Edwards has not fulfilled her end of the agreement that she made with the Davis's. Nevertheless, the court finds that the agreement that was made, and the agreement that the Davis's believed would be kept when they agreed to sign the driveway easement and maintenance agreement, was that Ms. Edwards would fulfill her obligation within a one-year period of time. The court puts great weight on the credibility of all of the witnesses in reaching this conclusion. The court finds both Mr. and Mrs. Davis' credibility to be high concerning this issue. The court finds that it is unlikely the Davis's would have reached the agreement and signed the easement documents (exhibit #3) without the assurance of Ms. Edwards that she would be constructing a driveway within the immediate future.

The court finds that Ms. Edwards knew she was obligated to build a driveway, and even took the necessary steps upon being notified by Mr. Davis of his expectation that she begin the process immediately. This is evident to the court, based upon the fact that Ms. Edwards not only obtained a permit from the State of Tennessee Department of Transportation, she also obtained three separate estimates to determine what the cost for building the driveway would be. It is simply not credible to the court to believe that she did not know that she had to build the driveway, based upon the statements she had made previously and ultimately the actions she actually took.

Edwards filed a motion to alter or amend the Trial Court's judgment. Plaintiffs filed a response in opposition to Edwards' motion, as well as a motion for additional findings. Plaintiff later filed an amended motion pursuant to Tennessee Rules of Civil Procedure 52 and 59. Plaintiffs informed the Trial Court that Edwards had by this point built, and was using, the court-ordered driveway. Plaintiffs also sought termination of the DEMA, even though that issue was not tried. In the meantime, Edwards sold the subject property to Defendants.

At a September 2024 hearing on post-trial motions, Edwards' counsel said he did not believe the DEMA had ever been in dispute, and that the issue at trial was whether Edwards was required to build a driveway. Counsel said he was surprised Plaintiffs were now asking for the DEMA to be terminated. Even still, at the end of the hearing, the Trial Court found that the DEMA was temporary and had terminated. In October 2024, the Trial Court entered an order granting Plaintiffs' motion and denying Defendants' motion. The Trial Court attached to its order a transcript of its oral ruling, in which it stated, in part:

THE COURT: Okay.

Folks, I reread this file on Friday. Maybe I could have been more clear, but not -- at least in my intentions. My belief was then and still is now -- now, was there this question that Mr. Jenne brings up maybe was it in [sic] artfully worded by whoever did the document. And I'm not beating anybody up because I don't even remember who did the document. But nevertheless, the agreement in my mind was very clear. They had an agreement for party A so [Schlaeger] could get her property sold, I thought. You can go ahead and have this joint use driveway until such time as you get your new driveway built. That was nothing but a temporary agreement.

Now, Ms. Edwards, for whatever reason -- and I believe it was because of her break up her marriage -- she didn't have the benefit of his funds.

You weren't here in order to know that…

And so consequently, all of that said, folks, I believe this to be a temporary joint used driveway easement, and a temporary joint use maintenance agreement. Now, was it in-artfully worded? Yes. But by their other words, in my mind, there was no question this was just intended at all times to be temporary until she got the permanent driveway built. And then she decided, for whatever reasons, not to build it, but now she did build it. So in my opinion it is -- it's null. It's over. And so once she got her permanent driveway built, which she did, then this became null and no longer a part of it.

Now, what does this do to a new buyer? I don't know. That's a good question. And so I guess -- I guess that's going to be another legal question for another day, given the outcome. But bottom line is I thought this was temporary, intended to help [Schlaeger] get her house sold to -- or Ms. Edwards and then it went from there.

Edwards timely appealed to this Court. Edwards later filed a motion to substitute Defendants, the new property owners, as the appellants. We granted Edwards' motion to substitute.

## **Discussion**

Although not stated exactly as such, Defendants raise the sole issue: whether the Trial Court erred in terminating Defendants' driveway easement rights established by the DEMA. Plaintiffs raise separate issues of whether Defendants have waived their arguments and whether this appeal is frivolous.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the

evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon Cnty. Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We review the Trial Court's decision to grant Plaintiffs' post-trial motion filed pursuant to Tenn. R. Civ. P. 52 and 59 for abuse of discretion. *See Morrissett v. Morrissett*, No. W2003-01052-COA-R3-CV, 2004 WL 1656479, at *12 (Tenn. Ct. App. July 23, 2004), *no appl. perm. appeal filed* ("Husband apparently filed his motion under Rules 52.02, 59.02 and/or 59.04 of the Tennessee Rules of Civil Procedure, which are each reviewed for an abuse of discretion."). In *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515 (Tenn. 2010), the Tennessee Supreme Court discussed the abuse of discretion standard at length, stating:

> The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal. *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009); *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000). It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999). Thus, it does not permit reviewing courts to second-guess the court below, *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999), or to substitute their discretion for the lower court's, *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002).

> Discretionary decisions must take the applicable law and the relevant facts into account. *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007). A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence. *State v. Ostein*, 293 S.W.3d 519, 526 (Tenn. 2009); *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249

S.W.3d at 358; *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d [22,] 42 [(Tenn. 2005)].

To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions. *Flautt & Mann v. Council of Memphis*, 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008) (quoting *BIF, a Div. of Gen. Signal Controls, Inc. v. Service Constr. Co.*, No. 87-136-II, 1988 WL 72409, at *3 (Tenn. Ct. App. July 13, 1988) (No Tenn. R. App. P. 11 application filed)). When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the lower court's legal determinations de novo without any presumption of correctness. *Johnson v. Nissan N. Am., Inc.*, 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004); *Boyd v. Comdata Network, Inc.*, 88 S.W.3d at 212.

*Beecher*, 312 S.W.3d at 524-25.

Regarding the interpretation of easements by express grant such as the DEMA, this Court has stated:

"To create an easement by express grant, there must be a writing containing plain and direct language evincing the grantor's intent to create a right in the nature of an easement rather than a license." *Smith v. Evans*, 2008 WL 3983117, at *2 (citing 25 Am.Jur.2d Easements and Licenses § 15 (2008); *Adcock v. Witcher*, 1995 WL 675852 at *2 (Tenn. Ct. App. Nov. 15, 1995)). "The scope of such an easement is set forth in express terms, either in the granting documents or as matter of incorporation and legal construction of terms of relevant documents . . . [.]" *Smith v. Evans*, 2008 WL 3983117, at *2 (citing 25 Am.Jur.2d Easements and Licenses § 15).

"In the construction of instruments creating easements, it is the duty of the court to ascertain and give effect to the intention of the parties." *Burchfiel v. Gatlinburg Airport Authority*, No. E2005-02023-COA-R3-CV, 2006 WL 3421282, at *3 (Tenn. Ct. App. 2006) (citing 28A C.J.S. Easements § 57 (1996)). The intention of the parties with regard to the purpose and

scope of an easement conveyed by express grant is determined by the language of the deed. *See Foshee v. Brigman*, 174 Tenn. 564, 129 S.W.2d 207, 208 (Tenn. 1939) ("If the easement is claimed under a grant, the extent of the easement is determined by the language of the grant."). "[T]he easement holder's use of the easement must be confined to the purpose stated in the grant of the easement." *Columbia Gulf Transmission Co. v. The Governors Club Prop. Owners Ass'n*, No. M2005-01193-COA-R3-CV, 2006 WL 2449909, at \*3 (Tenn. Ct. App. Aug. 21, 2006).

*Shell v. Williams*, No. M2013-00711-COA-R3-CV, 2014 WL 118376, at \*4 (Tenn. Ct. App. Jan. 14, 2014), *no appl. perm. appeal filed*. In addition, "[a]n easement agreement is a contract, and the interpretation of a contract is a question of law that we review de novo." *Hixson v. American Towers, LLC*, 593 S.W.3d 699, 711 (Tenn. Ct. App. 2019).

Although not identified as a separate issue, Defendants purport to incorporate into their brief the claims and defenses contained in Edwards' motion to alter or amend pertaining to the verbal agreement contested at trial. Defendants acknowledge that this issue may be moot since Edwards completed the driveway. Indeed, it is a moot issue. The driveway was built. This would-be issue is without merit.

We next address whether the Trial Court erred in terminating Defendants' driveway easement rights established by the DEMA. Plaintiffs argue that Defendants waived this issue by failing to respond to their post-trial motions or citing any authority in opposition. However, Plaintiffs do not cite any authority for the proposition that failure to respond to a motion filed under Tenn. R. Civ. P. 52 and 59 somehow means that the non-moving party is precluded outright from raising opposing arguments at the hearing on the motion. At the hearing on post-trial motions, Defendants' counsel expressed surprise that Plaintiffs were pursuing nullification of the DEMA. Counsel's surprise was understandable, since nullification of the DEMA was not an issue at trial. On the contrary, at trial, Plaintiffs acknowledged that the DEMA was permanent. Plaintiffs' trial counsel stated that "[w]e are not asking that the perpetual easement be set aside, the one to the Davises' property. It exists as it is written, henceforth forevermore, consistent with those terms." This statement by Plaintiffs' counsel was quite clear—Plaintiffs were not pursuing the nullification of the DEMA. Robert Davis reinforced this position in his testimony, acknowledging in the affirmative when asked if he understood that the "permanent access" was going to remain. At the hearing on post-trial motions, Defendants' counsel expressed his understandable surprise that Plaintiffs would pursue nullification of the DEMA given that this was not an issue at trial, and Plaintiffs had an opportunity to present their argument in response. We find that Defendants properly raised and argued their issue concerning the DEMA.

-11-

With respect to whether the DEMA is temporary or permanent, Defendants argue that the DEMA "sets forth in clear and plain terms the intentions of the parties, their respective rights and obligations to be forever afforded and imposed thereunder, as well as the fact that the same **would run with the land and to all respective heirs, successors and assigns.**" (Emphasis in original). In response, Plaintiffs argue that the DEMA was intended to expire on a condition subsequent—namely, upon Edwards building her driveway. The Trial Court agreed with Plaintiffs' argument that the DEMA was temporary, even though nothing in the DEMA reflects that. Since the DEMA is an easement by express grant, we determine the parties' intentions by reviewing the written terms of the grant. When a grant is unambiguous, we do not need to look beyond the plain terms of the instrument. The DEMA is unambiguous, and we look within its four corners to interpret it. Under its clear and unambiguous terms, the DEMA establishes "a permanent exclusive easement" that "shall run with the land." No conditions subsequent are mentioned. On the contrary, the DEMA provides that it is permanent. Respectfully, there was no textual basis for the Trial Court's finding that the DEMA was temporary.

Plaintiffs argue further that the DEMA was terminated by estoppel due to Edwards' initial failure to build the driveway pursuant to the separate verbal agreement. Plaintiffs note the Trial Court's favorable assessment of Plaintiffs' testimony and negative assessment of Edwards' testimony. While we do not disturb the Trial Court's credibility findings, they are irrelevant to our interpretation of the plain terms of the DEMA. That is, Plaintiffs' and Edwards' respective credibility does not create new terms or alter existing terms in the DEMA when the document itself is unambiguous. We do not find that the DEMA was terminated by estoppel.

In sum, the DEMA is clear and unambiguous. By its plain terms, the DEMA is permanent in nature. Plaintiffs acknowledged as much at trial. In granting Plaintiffs' motion for additional findings, the Trial Court failed to properly identify and apply the most appropriate legal principles applicable to the decision. In addition, given the unambiguous text of the DEMA and the fact that this issue was not even tried with the Plaintiffs admitting at trial that the DEMA was permanent, the Trial Court's decision to grant Plaintiffs' post-trial motion and nullify the DEMA did not fall within the range of acceptable alternative dispositions. We therefore find that the Trial Court abused its discretion in granting Plaintiffs' motion for additional findings.

As a final matter, Plaintiffs request costs and reasonable attorney's fees for a frivolous appeal. Given that Defendants prevail, their appeal is not frivolous. We decline to award Plaintiffs any costs or reasonable attorney's fees.

## Conclusion

The judgment of the Trial Court nullifying the Driveway Easement and Maintenance Agreement is reversed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellees, Robert Davis and Lala Davis.

_____
D. MICHAEL SWINEY, CHIEF JUDGE